The **DAYTON CASTING COMPANY**,
Plaintiff,

v.

**FULL MOLD PROCESS, INC.**,
Defendant.

Civ. No. C-3-75-153.

United States District Court,
S. D. Ohio, W. D.

Nov. 26, 1975.

Joseph G. Nauman, of Biebel, French & Bugg, Dayton, Ohio, for plaintiff.

Robert P. Bartlett, Jr., of Estabrook, Finn & McKee, Dayton, Ohio, for defendant.

## ORDER

CARL B. RUBIN, District Judge.

This case arises from an action brought by the plaintiff for a declaratory judgment of patent invalidity, non-infringment and non-coverage by a prior license agreement of the patents in issue. Subject matter jurisdiction arises under the Patent Laws of the United States, Title 35, United States Code and 28 U.S.C. § 1338; diversity of citizenship, 28 U.S.C. § 1332(a) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. Venue is predicated upon 28 U.S.C. § 1391(c) and personal jurisdiction on Rule 4(d)(3) and (e), Fed.R.

Civ.P., Ohio Revised Code § 2307.382 and Ohio Court Rule 4.3. This matter is before the Court upon the motion of the defendant to dismiss for lack of jurisdiction of the person and subject matter, improper venue and for the reason there exists no controversy between the parties.

The subject matter of this suit concerns certain patents which relate to the manufacture of castings by molding. Plaintiff, The Dayton Casting Company, is an Ohio corporation with its principal place of business in Dayton, Ohio. It is engaged in the manufacture and sale of castings to such customers as General Motors Corporation. The Defendant, Full Mold Process, Inc., is a Delaware corporation with its principal place of business at Lathrop Village, Michigan. The defendant engages in the practice of patent licensing and promotion and is the owner of the patents herein challenged.

On or about January 1, 1964, the plaintiff's predecessor-in-interest and the defendant entered into an agreement whereby the plaintiff was licensed to practice the invention of U. S. Patent No. 2,830,343 (hereinafter the Shroyer patent). The license contained a provision for variable royalties, and between January 1, 1964, and April 15, 1975, the plaintiff and its predecessors-in-interest paid to the defendant the sum of $543.-184.45. Under the license agreement the defendant maintained the right to inspect the books and records of the plaintiff for the purpose of verifying the amount of royalties due. During the eleven (11) year period of the license service consultants employed by the defendant visited the plaintiff's Dayton offices on a regular basis to offer advice and consult in connection with the manufacturing of castings. The Shroyer patent expired on April 15, 1975, and the plaintiff ceased paying royalties under the agreement on that date.

The patents challenged in this suit, U. S. Patent Nos. 3,314,116 and 3,498,360 (hereinafter the Wittmoser patents) re-

late to improvements in the Shroyer patent process. They are alleged by the defendant to be basic to its "Full Mold" method of casting and have expiration dates of April 17, 1984, and March 2, 1987, respectively. The license agreement between the parties provided for the additional licensing of improvements to the Shroyer patent without increase in the amount of royalty payments due; however, the term of such substitute licenses would be extended to the expiration date of the improvement patents. In connection with the above provision the defendant offered to the plaintiff in February of 1971 a substitute license agreement which included the right to practice the two improvement patents. No reply to the offer was ever received by the defendant, and it is no longer disputed that the plaintiff neither signed nor accepted it.

Prior to a consideration of the facts at issue it is appropriate to review briefly the purpose of the Declaratory Judgment Act[1] and the pertinent case law. The Declaratory Judgment Act was designed to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never. The Act permits parties so situated to forestall the accrual of potential damages by suing for a declaratory judgment, once the adverse positions have crystallized and the conflict of interests is real and immediate. *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The determination of when that point is reached (so that the plaintiff can no longer be said to be seeking a purely ad-

visory opinion) is an elusive one. Whether or not such a dispute exists is a question of degree which turns on the facts of each case and for which no hard rules can be given. Ibid.

Nevertheless, the cases do offer some guidance in the case of a patent action for a declaration of non-infringement and invalidity. In the case of *Robin Products Company v. Tomecek,* 465 F.2d 1193 (1972); the United States Court of Appeals for the Sixth Circuit states:

The Declaratory Judgment Act, 28 U.S.C.A. § 2201, requires the existence of "an actual controversy within [the court's] jurisdiction." In actions of the type herein involved, a justiciable controversy is made out upon plaintiff's showing of "any indirect or implicit or covert charge [of infringement] or threat [of suit or] . . . any conduct or course of action from which any charge or threat could be inferred." *Goodrich-Gulf Chemicals, Inc. v. Phillips Petroleum Co.,* 376 F.2d 1015, 1019 (6th Cir. 1967). The alleged demand for payment of posttermination royalties is "conduct . . . from which any [infringement] charge . . . could be inferred," if not an implicit charge of infringement. 465 F.2d at 1195

The appropriate test is whether the course of action would be regarded by a reasonable man as a charge of infringement and was so regarded by the party seeking declaratory relief. 465 F.2d at 1196

The Court has before it four letters upon which the plaintiff relies to show the existence of an actual controversy.[2] Upon consideration of their contents and

1. 28 U.S.C. Sections 2201 and 2202 read:
   "2201. Creation of remedy. In a case of *actual controversy within its jurisdiction,* except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the *rights and other legal relations of any* interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the

force and effect of a final judgment or decree and shall be reviewable as such."
   "2202. Further relief. Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse *party whose rights have been* determined by such judgment."

2. Attached as Appendices A–D.

the arguments advanced by each party it appears that the letters of April 29 and May 27 asserting rights to continued receipt of royalty payments under the license agreement did result by the misunderstanding on the part of the defendant that the substitute agreement had been accepted by the plaintiff. The letter of August 1, 1975, conclusively demonstrates that no controversy exists with reference to alleged coverage of the Wittmoser patents under the 1964 license agreement, for neither party alleges they are included within it.

■ It is also clear to the Court that an actual controversy exists between the parties in relation to the patents involved. The letters of April 29, May 27 and August 1, 1975, which the defendant sent to the plaintiff are implicit charges of infringement and thinly veiled threats of suit. No amount of explanation or obfuscation detracts from their essential character. The letter of August 5, 1975, from the defendant to General Motors Corporation, a long-time and substantial customer of the plaintiff, is even more explicit and extends the threat of suit to purchasers of the plaintiffs products. The action of the defendant most clearly would be regarded by a reasonable man as a charge of infringement and was appropriately so regarded by the plaintiff in this action.

Having determined that an actual controversy exists between the parties with respect to infringement and validity of the Wittmoser patents, it follows that the Court has jurisdiction over the subject matter of the instant complaint pursuant to 28 U.S.C. § 1338 and 28 U.S.C. § 2201.

■■ With respect to personal jurisdiction and venue, the Court is compelled to agree to a great extent with the defendant's position. Each of the actions by which the defendant is alleged to be doing business in this state occurred prior to and ceased before the present controversy arose between the parties. Thus, the payment of royalties to the defendant by the plaintiff and visits by the defendant's employees to the plaintiff's offices occurred in connection with the 1964 license agreement which expired in April of 1975. The controversy over the Wittmoser patents did not in fact arise until after the license agreement had expired. Title 28 United States Code, Section 1391(c) places proper venue in any district where the corporation "*is* doing business." At the very least this requires that the corporation be doing business in the district at the time the action arose, but the Court has been provided no facts from which such a determination could be made. Similarly, for personal jurisdiction to be asserted under the Ohio long-arm statute, the cause of action must arise from the activity upon which personal jurisdiction is based. See O.R.C. § 2307.382(B). The defendant was doing business under the 1964 license agreement in Ohio, but the present controversy did not arise from those activities.

The plaintiff has failed to show that personal jurisdiction may be asserted over the defendant or that venue is proper in this district. However, it does not necessarily follow that the defendant's motion to dismiss must be granted. Subject matter jurisdiction to determine this controversy is present in the federal courts, and both personal jurisdiction and proper venue are found in the United States District Court for the Eastern District of Michigan.

■ Section 1406(a) of Title 28 provides that where it is in the interest of justice to transfer an improperly filed case rather than dismiss, the Court may do so upon its own motion. It is not necessary that the Court have personal jurisdiction over the defendant, so long as subject matter jurisdiction is present. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Dubin v. United States,* 380 F.2d 813 (5th Cir. 1967); *Mayo Clinic v. Kaiser,* 383 F.2d 653 (8th Cir. 1967).

■ For this Court to grant the defendant's motion to dismiss is clearly not in the interest of justice. It would result in needless expense and delay by

requiring a completely new filing in the Eastern District of Michigan. It might well result in a duplication of judicial effort in the determination of identical motions to those considered in this opinion. The purpose of the Declaratory Judgment Act would be hindered by the delay in providing a speedy resolution of the actual controversy between these parties.

Accordingly, the Court finds that the interest of justice is best served by the transfer of this action pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the Eastern District of Michigan. The defendant's motion to dismiss will be, and is hereby, denied.

It is so ordered.

## APPENDIX A

April 29, 1975

Mr. Clarence Westendorf
President
The Dayton Castings Company
Box 845 Kiser & Chapel
Dayton, Ohio 45401

Dear Clarence:

As you are probably aware, the so-called Shroyer patent (U.S. Pat. No. 3,830,343) which served as the initial foundation for the Full Mold Process, expired on April 14, 1975.

As you know, however, The Full Mold Process is also based upon various "improvement" patents, principal among which are two patents involving coatings for molds (U.S. Pat. Nos. 3,314,116 and 3,498,360, which will not expire until April 17, 1984 and March 2, 1987, respectively). These improvement patents are covered by the License Agreement between Full Mold Process, Inc. and your company. The term of the License Agreement extends until the expiration of the improvement patents covered thereby, and therefore neither your obligations nor ours under the License Agreement are in any way affected by the expiration of the Shroyer patent.

We are sending you this letter in order to prevent any misunderstandings arising from the expiration of the Shroyer patent, and to indicate our firm resolve to continue to prosecute vigorously any infringement of existing patents comprising the Full Mold Process. We feel that this policy results in mutual benefits to both our company and our licensees.

We trust that our relationship with you will continue to be mutually rewarding. We at Full Mold look forward especially to the coming several months, since all indications are that business in general, and the automobile business in particular, will be picking up substantially.

We at Full Mold are available at all times to provide assistance to you, our licensees. We hope that you will call upon us whenever you feel we may be of service to you.

Sincerely,

FULL MOLD PROCESS, INC.
(s) Charles C. Mezey
Charles C. Mezey
President
CCM:af

## APPENDIX B

May 27, 1975

Mr. Clarence Westendorf
The Dayton Castings Company
Box 845
Kiser & Chapel
Dayton, Ohio 45401

Dear Mr. Westendorf:

We took note of your royalty report for the month of April which only included from April 1 through April 15.

We sent you a letter dated April 29 which stated Full Mold's position in regards to patent rights and our intentions in connection with these patent rights. We enclose another copy of that letter in case it went astray. We would like your reply to the letter so your intentions in regard to the continuation of our relationship are clear.

We look forward to hearing from you.

Sincerely,

FULL MOLD PROCESS, INC.
(s) Charles C. Mezey
Charles C. Mezey
President

CCM:af
Enc.

 

APPENDIX C

August 1, 1975

Mr. Richard Westendorf
The Dayton Casting Company
300 Kiser Street
Dayton, Ohio 45404

Dear Dick:

This is to inform you that under Paragraph 3 of the license agreement of January 1, 1964, between The Dayton Casting Company and Full Mold Process, Inc., you are no longer a licensee of Full Mold Process, Inc.

Further, we wish to advise you that Full Mold Process, Inc. intends to fully protect its patent position.

Accordingly, we shall take such steps as we deem necessary in this regard without further notice.

> Very truly yours,
> FULL MOLD PROCESS, INC.
> (s) Charles C. Mezey
> Charles C. Mezey
> President

CCM:ms

APPENDIX D

August 5, 1975

Mr. F. F. Hilber
Vice President and General Counsel
General Motors Corporation
General Motors Building
3044 W. Grand Blvd.
Detroit, Michigan 48202

Dear Mr. Hilber:

Full Mold Process, Inc. has licensed numerous foundries to operate under Full Mold Process, Inc. patents, at least three of which, No. 2,830,343, No. 3,314,116 and No. 3,498,360, we believe to be basic to what has become known as the Full Mold method of casting.

Since May 14, 1975, the expiration date of patent No. 2,830,343, Motor & Machinery Castings Company, Martin Foundries and The Dayton Casting Company have not paid royalties to Full Mold Process, Inc. These foundries have been notified that they are no longer licensees of Full Mold Process, Inc., and are not therefore allowed to operate under Full Mold Process, Inc. unexpired patents.

Full Mold Process, Inc. believes you should be made aware of the above facts, since it intends to take those steps necessary to protect its patent position against not only infringers, but also contributory infringers and those who may induce infringement of its patents.

> Very truly yours,
> FULL MOLD PROCESS, INC.
> (s) Charles C. Mezey
> Charles C. Mezey
> President

CCM:af