## NATIONAL CITY BANK OF NEW YORK v. DOMENECH.
### No. 2896.

Circuit Court of Appeals, First Circuit.
May 18, 1934.

E. T. Fiddler, of San Juan, P. R. (H. S. McConnell, of San Juan, P. R., on the brief), for appellant.

William C. Rigby, of Washington, D. C. (Fred W. Llewellyn and Arthur W. Brown, both of Washington, D. C., and Benjamin J. Horton, Atty. Gen., of Puerto Rico, on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from a judgment of the federal District Court for Puerto Rico dismissing plaintiff's suit to recover certain property taxes paid under protest to the defendant as treasurer of Puerto Rico. By stipulation in writing trial by jury was waived, and the case was submitted to the court on the pleadings and a further stipulation in which it was agreed that the plaintiff bank was, in the year 1917, after due compliance with the terms of section 601, title 12 USCA, authorized to do business in the Island of Puerto Rico.

The facts are in substance as follows: The plaintiff is a national banking association located and doing business in New York, created under the National Bank Act. It is also doing business in Puerto Rico through various branches established under the authority of the Federal Reserve Board, granted pursuant to the provisions of section 25 of the Federal Reserve Act, as amended (12 USCA § 601).

On March 15, in compliance with the provisions of sections 319 and 320 of the Political Code of Puerto Rico (Rev. St. & Codes Puerto Rico 1913, §§ 2971, 2972), the plaintiff filed with the treasurer of Puerto Rico a sworn statement or schedule setting forth all its assets as of January 15, 1932, for the pur-

pose of taxation for the fiscal year 1932, 1933; and, at the request of the treasurer, but under protest, it attached to its schedule of properties an exhibit entitled "Memorandum for Purposes of information only," in which memorandum appears the following:

1. Average amount of capital, surplus and undivided profits of Bank as a whole ................ $225,942,636.00
2. Average amount of total assets of the Bank as a whole ................1,869,012,164.00
3. Percentage of item (1) to item (2) .............. 12.08%
4. Average amount of total assets of the Bank in Puerto Rico (not including tax exempt securities)....... 20,192,112.00
5. Item (3) applied to item (4) .................. 2,439,207.00
6. Due notification to the Treasurer that The National City Bank of New York regarded any tax, except taxes on real estate and net income prohibited by section 548 of title 12 of the United States Code (section 5219, Rev. Stat.)

On July 26, 1932, the defendant notified the plaintiff of the assessment of a property tax for the fiscal year 1932-1933 from which it appeared that the bank was to be taxed upon the basis of $2,439,200 of capital employed in Puerto Rico, which was divided by the treasurer into the following classifications:

Real Property and Buildings.. $732,560.00
Other personal property...... 1,611,400.00
Tangible personal property... 95,240.00
————————
Total ..................$2,439,200.00

From this assessment the plaintiff appealed to the Board of Review and Equalization claiming a deduction of $1,705,640, that being the amount of the items assessed against "other personal property" and "tangible personal property." The Board sustained the assessment in its entirety and thereupon, at the request of the Treasurer that it pay a tax of $62,122.98, it paid without protest $17,-700.24, the amount of the tax against the real property and buildings, and paid under protest the balance of the tax of $44,422.74, being that portion assessed against "other personal property" and "tangible personal

property." Within the time allowed by law, the plaintiff brought this complaint seeking to recover the $44,422.74 paid under protest.

In the complaint it was further alleged that the defendant, in addition to assessing and collecting the tax on the real property of the plaintiff in Puerto Rico, had assessed and collected a tax on its net income under the provisions of the Act of the Legislature of Puerto Rico, No. 74, entitled "The Income Tax Act of 1924," approved August 6, 1925.

The defendant, having admitted in his answer the facts alleged in the complaint, denied that the plaintiff bank was acting in Puerto Rico as a national banking association, and denied that the provisions of section 548, title 12 USCA (section 5219, Rev. Stat.) were applicable to the plaintiff bank when doing business in Puerto Rico.

In the court below it was ruled:

1. "That the National City Bank of New York in New York and the National City Bank of New York doing business in Puerto Rico cannot be treated in the same manner for the purposes of taxation.

2. "That the National City Bank of New York doing business in Puerto Rico from its branch and banking house in the city of San Juan and other cities in the Island of Puerto Rico are separate and distinct entities as relating to business transactions between them and are not subject to the same rules as to taxation [as The National City Bank of New York in New York].

3. "That section 548 of title 12 of the United States Code, Annotated, is not applicable to the branch of said bank in Puerto Rico, insofar as taxation is concerned.

4. "That branches of national banks of the United States in the dependencies or insular possession of the United States are to be treated for the purposes of taxation in Puerto Rico the same as if they were branches in foreign countries and that the Organic Act of Puerto Rico gives its Insular Legislature full power and authority to tax the Puerto Rican branch of The National City Bank of New York in the same manner and to the same extent as it does other branches of foreign banks doing business in Puerto Rico.

5. "That the Treasurer of Puerto Rico, acted within the law when he imposed the taxes in question.

6. "That The National City Bank of New York, Puerto Rican branch, is subjected to the laws of the island in regard to taxation, the same as any other banking institution doing business on the island.

7. "That the complaint filed herein by The National City Bank of New York against Mr. Manuel V. Domenech as Treasurer of Puerto Rico is without substance or merit and the plaintiff will take nothing by reason thereof. * * * "

The questions involved in this case are:

1. Whether under the National Bank Act authorizing the establishment of national banks such a bank may be located and do business in Puerto Rico.

2. Whether a national bank so located and doing business can be taxed there without the consent of Congress.

3. Whether section 5219 of the Revised Statutes, as amended, is applicable to Puerto Rico and authorizes it to tax national banks located and doing business there; and

4. Inasmuch as it is conceded and must be conceded that the National City Bank of New York, located and doing business in New York, is authorized under the acts of Congress and permission granted thereunder by the Federal Reserve Board to conduct a banking business through branches in Puerto Rico, has Congress authorized the taxation of such bank by Puerto Rico to the extent that it does business there through its branches, either under section 5219, as amended, or otherwise.

 We think that under the National Bank Act and other acts of Congress a national bank may be located in Puerto Rico and authorized to do business there; that this question was, in part at least, decided by the Supreme Court as early as 1890 in construing the provisions of the National Bank Act in the case of Talbott v. Silver Bow County, 139 U. S. 438, 442–446, 11 S. Ct. 594, 35 L. Ed. 210. It is there pointed out that "the national banking system was national in its design, coextensive in its operation with the territorial limits of the United States, and intended to be the banking system for the whole country, territories as well as states." Page 442 of 139 U. S., 11 S. Ct. 594, 595.

After referring to the various sections of the Revised Statutes contained in chapters 1, 2, 3, and 4 of title 62 (section 5133 et seq.) relating to the organization and powers of national banks, the obtaining and issuing of circulating notes, the regulation of the banking business, and the dissolution and receivership of such banks, and particularly to section 5134, paragraph second (12 USCA § 22, par. 2), requiring the persons uniting to form such an association to state in their organization certificate "the place where its opera-

tions of discount and deposit are to be carried on, designating the state, territory, or district, and the particular county and city, town, or village," the court, continuing its observations with reference to this question, said:

"These various provisions, scattered through the entire body of the statute respecting national banks, emphasize that which the character of the system implies,—an intent to create a national banking system co-extensive with the territorial limits of the United States, and with uniform operation within those limits, to establish everywhere throughout the United States banks with the security which a national examination gives, and furnish a currency of uniform value, the same in Arizona as in New York, in territory as in state. Given a system of such national character, and such uniform and universal operation through the entire territorial limits of the country, before any particular section of the statute creating it shall be tortured into creating a discrimination and difference in privileges and burdens by reason of locality, its language must imperatively demand such construction."

It being thus made certain that Congress in creating the national banking system by the bank act intended that it should be co-extensive with the territorial limits of the United States, its territorial limits having been enlarged by the acquisition of Puerto Rico, there can be little doubt that Congress also considered that, by the acquisition of the island, the establishment of a political government therein, and the extension thereto of "the statutory laws of the United States not locally inapplicable" by section 9 of its Organic Act, the National Bank Act was extended there with full force and effect. Organic Act of Puerto Rico, § 9 (48 USCA § 734); 23 Op. Attys. Gen. 169; 23 Op. Attys. Gen. 177; 36 Op. Attys. Gen. 59.

It is not contended in this case that a bank organized under the National Bank Act and located in Puerto Rico could not be taxed by Puerto Rico to the extent and in the manner authorized by Congress (Rev. Stat. § 5219, as amended), but while the National City Bank, located and doing business in New York, is, in respect to that business, a national bank of the United States, the contention seems to be that to the extent it is authorized and does business in Puerto Rico it ceases to be such a bank and is subject to taxation by Puerto Rico without the consent of Congress. In other words, that a national bank located and doing business in New York ceases to be

a national bank when it also does business through branches in Puerto Rico, or that, thereby, Puerto Rico ceases to be within the territorial limits of the United States and becomes a foreign country. It seems to us that the mere statement of the contention is its own refutation. Puerto Rico, whether you call it a territory or possession, is but a political organization "wholly dependent upon congress, and subject to its absolute supervision and control" (Talbott v. Silver Bow County, 139 U. S. at page 441, 11 S. Ct. 594, 595, 35 L. Ed. 210), and can no more tax a national bank authorized to do business there than could the territory of Montana, without the consent of Congress (Talbott v. Silver Bow County, supra; Des Moines National Bank v. Fairweather, 263 U. S. 103, 44 S. Ct. 23, 68 L. Ed. 191; First National Bank of Guthrie Center v. Anderson, 269 U. S. 341, 46 S. Ct. 135, 70 L. Ed. 295; Iowa-Des Moines National Bank v. Bennett, 284 U. S. 239, 52 S. Ct. 133, 76 L. Ed. 265; First National Bank v. Adams, 258 U. S. 362, 42 S. Ct. 323, 66 L. Ed. 661).

In the Talbott Case it was not only held that the National Bank Act authorized the establishment of a national bank located in a political subdivision of the country, be it called a state, district, or territory, but that a national bank located in such a political subdivision or district could not be taxed there except with the consent of Congress.

The National City Bank located in New York did not cease to be a distinct entity by doing business in Puerto Rico in addition to that done in New York; and by doing business in Puerto Rico is not subject to taxation there without the consent of Congress, as it would be by doing business in a foreign country.

The only statute called to our attention specifically authorizing a state or other political subdivision of the country to tax a national bank, and prescribing the terms and conditions under which it may do so, is section 5219 of the Revised Statutes (a section of the National Bank Act), as amended by the Act of March 25, 1926, 44 Stat. 223 (12 USCA § 548). At the time of the decision of the Supreme Court construing this section in the case of Talbott v. Silver Bow County in 1890, it read as follows:

"Sec. 5219. Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either State, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

It will be noticed that, under the provisions of section 5219, permission to tax a national bank on its shares or otherwise is given only to the state or political subdivision "within which the association is located," and that "the shares of any national banking association owned by non-residents of any State [or political subdivision] shall be taxed in the city or town where the bank is located, and not elsewhere."

The plaintiff banking association, under its charter, was located in the city of New York, not in Puerto Rico, and the only state or political subdivision to which consent was given under section 5219 to impose taxes upon it was the state in which it was located— New York. The amendment of section 5219 of March 25, 1926 (chapter 88, 44 Stat. 223 [12 USCA § 548]), did not change the statute in respect to the matter we are considering. It allows a choice of methods of taxation where previously only one method was afforded, but confines the imposition of the tax to the state within which the national banking association is located.

As New York, where the plaintiff bank is located, is the state or political subdivision permitted to assess a tax against the bank under section 5219, the tax assessed against its personal property by Puerto Rico was not authorized. Congress has never, specifically or even by implication, authorized the imposition of such a tax upon a national banking association and had no reason to believe, from an examination of section 320 of the Political Code of Puerto Rico of March 1, 1902, as amended by the Act of September 3, 1910 (Revised Stat. & Codes of Puerto Rico 1913 (2972) sec. 320), that Puerto Rico contemplated the imposition of any such tax. All that could be gathered from that section of the Code was that Puerto Rico proposed

to tax all the shares of banking institutions existing by authority of the United States "located and doing business within Puerto Rico," as it was authorized to do by section 5219. But Puerto Rico in this case did not even attempt to assess the shares of the bank, and for the very good reason that[a] the banking association was not located in Puerto Rico and consequently the shares were not there so that it could impose a tax upon them.

As Congress has not authorized Puerto Rico to assess a tax of the character here in question on a banking association of the United States located in continental United States, the tax was imposed without authority and the plaintiff is entitled to recover the sum paid under protest, with interest from the date of payment.

The judgment of the District Court for Puerto Rico is vacated and the case is remanded to that court with directions to enter judgment for the plaintiff-appellant, with interest, and with costs in this court and the court below.