20042

Robert L. HOLSON et al., Respondents, v. Rufus W. GOSNELL and First State National Bank, Appellants

(216 S. E. (2d) 539)

*Marion L. Powell, Esq.,* of *Powell and Poston,* Aiken, *for Appellants,*

*Messrs. Joe F. Anderson,* of Edgefield, and *Ronald L. Motley,* of Barnwell, *for Respondents,*

June 19, 1975.

Ness, Justice:

This case involves the single question of the existence of venue in an action in which one of the defendants is a national bank. The First State National Bank is established in Aiken County, and it operates a branch in Saluda County. This suit was instituted in Saluda County and is based upon allegedly fraudulent sales of securities, some of which were sold in Saluda County. The parties have agreed in the Statement of the case that "this is a transitory action not involving transactions of the Saluda branch office of Defendant bank."

Unquestionably, the Court of Common Pleas of Saluda County would have venue pursuant to S. C. Code, § 10-303 unless it has been pre-empted by the restrictive venue provision of 12 U. S. C. A. § 94 which reads:

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be *established,* or in any State, county, or municipal court in the county or city in which said association is *located* having jurisdiction in similar cases." (Emphasis added.)

This venue statute has its genesis in The National Bank Act of 1864, 13 Stat. 99 (as amended), 12 U. S. C. § 38 (1964). The purpose of such a restrictive provision is "to prevent interruption in their business that might result from [the banks'] books being sent to distant counties in obedience to process from state courts." *First National Bank of Charlotte v. Morgan,* 132 U. S. 141, 145, 10 S. Ct. 37, 39, 33 L. Ed. 282 (1889). While this section has been branded as a "horse and buggy statute in a supersonic age", *Aetna Casualty & Surety Company v. Graves,* 381 F. Supp. 1159, 1161 (W. D. La. 1974), it is of course, for the Congress and not the courts to repeal the statute if it has outlived its usefulness. For a discussion of the desirability of repeal see

*American Law Institute, Study of Division of Jurisdiction Between State and Federal Courts,* 77, 412-13 (1969); *Scheflin and Dixon, An Assault on the Venue Sanctuary of National Banks,* 34 Geo. Wash. L. Rev. 765 (1966); *Comment, Restricted Venue In Suits Against National Banks: A Procedural Anachronism,* 15 William & Mary L. Rev. 179 (1973).

Although section 94 reads permissively, it is now well settled that when the cause of action is transitory, its requirements are mandatory. *Mercantile National Bank v. Langdeau,* 371 U. S. 555, 83 S. Ct. 520, 9 L. Ed. (2d) 523 (1963), *Michigan Nat'l Bank v. Robertson,* 372 U. S. 591. 83 S. Ct. 914, 9 L. Ed. (2d) 961 (1963). Therefore, it becomes our task to determine if a bank is *located* in a county wherein it has purposefully constructed and is operating a branch bank. The United States Supreme Court has not construed this statutory meaning of located. A number of lower federal and state courts have held that a bank is located *only* where it is established that being the county recited in the charter. *Helco, Inc. and Potter v. First National City Bank,* 470 F. (2d) 883 (3rd Cir. 1972); *United States Nat'l Bank v. Hill,* 434 F. (2d) 1019 (9th Cir. 1970); *Buffum v. Chase Nat'l Bank,* 192 F. (2d) 58, cert. den. 342 U. S. 944, 72 S. Ct. 558, 96 L. Ed. 702 (7th Cir. 1942); *Leonardi v. Chase Nat'l Bank,* 81 F. (2d) 19 (2nd Cir. 1936); *Weichert v. American Nat'l Bank & Trust Co.,* 39 A. D. (2d) 819, 333 N. Y. S. (2d) 94 (1972). While we take cognizance of these decisions, we do not think their logic is sound. As one commentator has observed, these courts have given "national banks a sanctuary never contemplated by the act" by adhering to an interpretation "applicable solely to one-office banking in the face of statewide branch banking and extensive general business by national banks in more than one county." *Scheflin* and *Dixon, supra,* p. 778.

When the venue provision now incorporated in section 94 was passed, the operations of banks were very restric-

tive. Section 8 of the 1864 Act, provided that "the usual business shall be transacted at an office or banking house located in the place specified in its organizational charter." The bank would have but a single location; therefore, suits commenced in other areas would have been burdensome. Since those pioneering days Congress has granted authority for banks to establish a statewide system of branches. When the bank transposes itself from a single edifice to an operation thriving on branch banking business in other counties, it is no longer profiled as a single building institution. We must interpret the meaning of located in light of the statutory revisions which permits branch banking. The historical limitation with its rigid rule should give way to a more realistic and reasonable evaluation of the rights of the parties based on fairness. Such an evaluation requires a practical appraisal of the situation of the various parties rather than an emphasis upon somewhat arbitrary and antiquated concepts. When a bank operates a branch in a county other than that of its organizational charter, it is present there physically, organizationally, and transactionally. We think the conclusion is impelling that it is located there within the meaning of the statute. *Central Bank Nat'l Association v. Superior Court, County of Sacramento,* 30 Cal. App. (3d) 962, 106 Cal. Rptr. 912 (1973); *Security Mills of Asheville, Inc. v. Wachovia Bank & Trust Company,* 281 N. C. 525, 189 S. E. (2d) 266 (1972).

Another reason convinces us that this is harmonious with the congressional intent of section 94. In order for the purity of the securities market place to be preserved, aggrieved purchasers of stock must not be disadvantaged by burdensome venue statutes. Congress has expressly provided for very liberal venue provisions for claims arising out of fraudulent sales of securities. These provisions have been held to be an exception to section 94 of the Banking Act. *Ronson Corp. v. Liquifin Aktiengesellschaft,* 483 F. (2d) 852 (3rd Cir. 1973); *Levin v. Great Western Sugar Co.,* 274 F. Supp. 974 (D. C. N. J. 1967); *contra*

624

*Bruns, Nordeman & Company v. American Nat'l Bank & Trust Company,* 394 F. (2d) 300 (2nd Cir. 1968); *United States Nat'l Bank v. Hill, supra.* While the instant suit is not expressly premised upon violations of the 1933 and 1934 Securities Acts, it does deal with liability based on alleged similar activity and the concern of Congress that plaintiffs have convenient courts in which to litigate this type of action. We hold that a bank is *located* in any county in which it has a branch.

Affirmed.

Moss, C. J., LEWIS and LITTLEJOHN, JJ., and BRAILS-FORD, A. A. J., concur.