CITIZENS & SOUTHERN NATIONAL BANK *v.* BOUGAS

No. 76–398. Argued October 3, 1977—Decided November 8, 1977

BLACKMUN, J., delivered the opinion for a unanimous Court. STEWART, J., filed a concurring opinion, *post,* p. 45.

*William C. Humphreys, Jr.,* argued the cause for petitioner. With him on the brief was *Daniel B. Hodgson.*

*Michael J. Kovacich* argued the cause and filed a brief for respondent.

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

This case presents an issue of state-court venue of a transitory cause of action against a national bank. The suit was filed in the state court of the county of the branch and not in the court of the different county specified in the bank's charter.

The governing statute is Rev. Stat. § 5198, 12 U. S. C. § 94:

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which

said association is located having jurisdiction in similar cases."

The dispute obviously centers in the word "located" as it is employed in the statute.[1]

## I

Petitioner Citizens and Southern National Bank is a national banking association. It received its charter from the Comptroller of the Currency on May 2, 1927. The "place where its operations . . . are to be carried on," [2] is described in that charter as the "City of Savannah, in the County of

---

[1] The word "located" appears in at least two other federal statutes concerning national banks:

Title 28 U. S. C. § 1394 provides:

"Any civil action by a national banking association to enjoin the Comptroller of the Currency, under the provisions of any Act of Congress relating to such associations, may be prosecuted in the judicial district where such association is located."

And 28 U. S. C. § 1348 reads:

"The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

"All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located."

See *First Nat. Bank* v. *Williams*, 252 U. S. 504 (1920), and *Herrmann* v. *Edwards*, 238 U. S. 107 (1915), for comments upon the history of these respective statutes.

[2] Title 12 U. S. C. § 22 reads in part:

"The persons uniting to form such an association shall, under their hands, make an organization certificate, which shall specifically state:

. . . . .

"Second. The place where its operations of discount and deposit are to be carried on, designating the State, Territory, or District, and the particular county and city, town, or village."

Chatham and State of Georgia." App. 13. For some time now, however, the bank has done business not only at Savannah but also at branches, authorized under 12 U. S. C. § 36, in other Georgia counties. Tr. of Oral Arg. 4. One of these branches is at Decatur in De Kalb County. See *United States* v. *Citizens & Southern Nat. Bank,* 422 U. S. 86, 92 n. 4, 94 (1975). De Kalb County adjoins Fulton County; the city of Atlanta lies in both.

In late June 1975 respondent Bougas sued petitioner bank. His complaint was filed in the state court of De Kalb County. He sought actual and punitive damages for an alleged conversion of a $25,000 savings certificate issued to respondent and deposited by him as collateral for his son's note on which respondent had signed as surety.

The bank accompanied its answer to the complaint with a motion to dismiss respondent's suit "on the grounds of improper venue and lack of jurisdiction over Defendant." App. 9. It asserted that a national bank may be sued in a state court only "in the county in which its charter was issued," that is, for petitioner, only in Chatham County. *Ibid.* The De Kalb County Court denied that motion. App. to Pet. for Cert. A5. The Georgia Court of Appeals granted the bank's application for interlocutory appeal, but in due course affirmed. 138 Ga. App. 706, 227 S. E. 2d 434 (1976).[3] We granted certiorari, 429 U. S. 1071 (1977), in order to resolve an apparent conflict, hereinafter noted, among state courts in their construction of the word "located" in 12 U. S. C. § 94, when a defendant national bank is conducting banking business at an authorized branch outside its charter county.

Two issues are suggested by the parties: (1) Where is a national bank "located," within the meaning of § 94, for purposes of a transitory action brought in a state court, when

---

[3] The Supreme Court of Georgia, with one justice dissenting, denied certiorari. App. to Pet. for Cert. A8. Petitioner's motion for reconsideration was also denied, with two justices dissenting. *Id.,* at A9.

it conducts banking business at an authorized branch outside its charter county? (2) In any event, does its conduct of banking business at the branch constitute a waiver, actual or presumptive, of any venue restriction § 94 otherwise imposes? We decide the case adversely to the bank on the first issue and do not reach the question of waiver.

## II

This Court has had prior occasion to consider § 94. It is now settled that the statute's provision concerning venue in state courts, despite the presence of what might be regarded as permissive language, "is not permissive, but mandatory, and, therefore, 'that national banks may be sued only in those state courts in the county where the banks are located.' "[4] *National Bank* v. *Associates of Obstetrics,* 425 U. S. 460, 461 (1976), quoting *Mercantile Nat. Bank* v. *Langdeau,* 371 U. S. 555, 561 (1963). See *Radzanower* v. *Touche Ross & Co.,* 426 U. S. 148, 152 (1976); *Cope* v. *Anderson,* 331 U. S. 461, 467 (1947). The venue provision, however, has been held to be a privilege personal to the bank, and to be subject to waiver. *Charlotte Nat. Bank* v. *Morgan,* 132 U. S. 141, 145 (1889); *Mercantile Nat. Bank* v. *Langdeau,* 371 U. S., at 561, and n. 12.

In our view, this language of command does not in itself equate the statute's word "located" with the county designated in the bank's organization certificate and in its formal charter. Petitioner insists that the Court's reference in *Langdeau* to the effect that a ruling that would recognize state jurisdictional and venue requirements "would render altogether meaningless a congressional enactment permitting suit to be

[4] The Court long ago perceived a "local-action exception" to this rule. *Casey* v. *Adams,* 102 U. S. 66, 67–68 (1880). See *National Bank* v. *Associates of Obstetrics,* 425 U. S. 460, 461–462, n. (1976); *Michigan Nat. Bank* v. *Robertson,* 372 U. S. 591, 593 (1963). The exception, however, as *Casey* v. *Adams* itself acknowledges, 102 U. S., at 67, does not apply to an ordinary transitory action. See *Mercantile Nat. Bank* v. *Langdeau,* 371 U. S. 555, 561 n. 11 (1963).

brought in the bank's home county," *id.,* at 560, "implicitly entails the conclusion that a national bank cannot also be sued in any county wherein it operates branch banks." Brief for Petitioner 17. This, however, overstates the language and holding in *Langdeau,* a case that did not concern authorized branch banking at all. *Langdeau* is only the starting point, not the conclusion, for the resolution of the present case.[5]

## III

A. The lower federal courts appear to be unanimous in holding that a national bank, under § 94, is "established" only in the federal district that encompasses the place specified in the bank's charter. *E. g., Leonardi* v. *Chase Nat. Bank,* 81 F. 2d 19, 21–22 (CA2), cert. denied, 298 U. S. 677 (1936); *Northside Iron & Metal Co.* v. *Dobson & Johnson, Inc.,* 480 F. 2d 798, 799–800 (CA5 1973). See 7A Michie, Banks and Banking, ch. 15, § 220a (4) (1973 ed.); 1 J. Moore, J. Lucas, H. Fink, D. Weckstein, & J. Wicker, Moore's Federal Practice ¶ 0.144 [2.–1], p. 1473 (2d ed. 1977). This rule, however, is not without its scholarly criticism. See Steinberg, Waiver of Venue under the National Bank Act: Preferential Treatment for National Banks, 62 Iowa L. Rev. 129 (1976); Comment, Restricted Venue in Suits Against National Banks: A Procedural Anachronism, 15 Wm. & Mary L. Rev. 179 (1973); Note, An Assault on the Venue Sanctuary of National Banks, 34 Geo. Wash. L. Rev. 765 (1966); ALI, Study of the Division of Jurisdiction Between State and Federal Courts 77, 412–413 (1969). See also *Ronson Corp.* v. *Liquifin Aktiengesellschaft,* 483 F. 2d 852, 855 (CA3 1973).

We are not concerned in the present case, however, with this federal aspect of venue, and we have no occasion here to review these rulings.

B. We note in the decided state cases no less than three diverse interpretations of § 94:

---

[5] At oral argument petitioner acknowledged that *Langdeau* "is not determinative of the issue." Tr. of Oral Arg. 15.

1. Several rulings consider the words "established" and "located" to be functionally synonymous. Absent waiver, these cases restrict a state-court action against a national bank to the place designated in the bank's charter. *E. g., Ebeling* v. *Continental Illinois Nat. Bank & Trust Co.*, 272 Cal. App. 2d 724, 726–727, 77 Cal. Rptr. 612, 614 (1969); *Gregor J. Schaefer Sons, Inc.* v. *Watson,* 26 App. Div. 2d 659, 272 N. Y. S. 2d 790, 791 (1966); *Prince* v. *Franklin Nat. Bank,* 62 Misc. 2d 855, 310 N. Y. S. 2d 390, 391 (Sup. Ct. 1970). See 7A Michie, Banks and Banking, ch. 15, § 220b (1973 ed.).[6]

2. In contrast, other decisions hold that "established" and "located" are not synonymous. For state-court purposes, it is said, a bank may be "located" in any place where it operates and maintains a branch doing general banking business, even though, for federal-court purposes, it is "established" only at the place specified in its charter. *E. g., Security Mills of Asheville, Inc.* v. *Wachovia Bank & Trust Co.*, 281 N. C. 525, 532, 189 S. E. 2d 266, 271 (1972); *Holson* v. *Gosnell,* 264 S. C. 619, 623, 216 S. E. 2d 539, 541 (1975), cert. denied, 423 U. S. 1048 (1976); *Central Bank* v. *Superior Court,* 30 Cal. App. 3d 962, 971, 106 Cal. Rptr. 912, 918 (1973). The Georgia Court of Appeals in the present litigation so interpreted § 94. 138 Ga. App., at 709, 227 S. E. 2d, at 436.

3. Still other courts conclude that by establishing a branch in a county other than that designated in its charter, a national

---

[6] In a number of federal cases the words "established" and "located" have been regarded as essentially the same. *E. g., Leonardi* v. *Chase Nat. Bank,* 81 F. 2d 19, 21–22 (CA2), cert. denied, 298 U. S. 677 (1936); *Northside Iron & Metal Co.* v. *Dobson & Johnson, Inc.,* 480 F. 2d 798, 799 (CA5 1973); *Fisher* v. *First Nat. Bank,* 538 F. 2d 1284, 1286–1287 (CA7 1976), cert. denied, 429 U. S. 1062 (1977); *United States Nat. Bank* v. *Hill,* 434 F. 2d 1019, 1020 (CA9 1970). See 7A Michie, Banks and Banking, ch. 15, § 220a (4) (1973 ed.). These cases, however, necessarily were concerned with the word "established" and not with "located." None dealt with the issue of venue of a state-court suit against a national bank in a county in which the bank was operating only a branch.

bank presumptively waives any venue restriction of § 94, at least as to a suit arising out of banking activity at that branch. *Lapinsohn* v. *Lewis Charles, Inc.,* 212 Pa. Super. 185, 193–195, 240 A. 2d 90, 94–95, cert. denied *sub nom. First Camden Nat. Bank & Trust Co.* v. *Lapinsohn,* 393 U. S. 952 (1968); *Security Mills of Asheville, Inc.* v. *Wachovia Bank & Trust Co., supra* (alternative ground). See *Vann* v. *First Nat. Bank,* 324 So. 2d 94, 95 (Fla. App. 1975), and *Exchange Nat. Bank* v. *Rotocast Plastics Products, Inc.,* 341 So. 2d 787, 789 (Fla. App. 1977).

These inconsistent approaches cannot all be appropriately interpretive of § 94. We therefore look to the legislative history to see what light it may afford.

## IV

This Court reviewed that history, so far as it concerned the state-court venue provision, in *Mercantile Nat. Bank* v. *Langdeau,* 371 U. S., at 558–562. There the Court noted: (a) "Unquestionably Congress had authority to prescribe the manner and circumstances under which [national] banks could sue or be sued in the courts," *id.,* at 559. (b) The "roots" of the venue problem "reach back to" the National Bank Act of 1863, 12 Stat. 665. 371 U. S., at 558. (c) Section 59 of the 1863 Act, 12 Stat. 681, spoke only of suits in a federal court "within the district in which the association was established" and made no mention of suits in state courts, 371 U. S., at 559. (d) The 1863 Act was replaced shortly by the National Bank Act of 1864, 13 Stat. 99, ch. 106, which, in its § 57, "carried forward the former § 59 and also added" the provision that " 'suits . . . may be had . . . in any state, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases,' " 371 U. S., at 560. (e) "Congress intended that in those courts alone could a national bank be sued against its will," *ibid.* (f) Although § 57 was omitted from Title 62 (National Banks)

of the Revised Statutes of 1873, Title 13 (the Judiciary) contained provisions, § 563 Fifteenth, "granting the federal courts jurisdiction over suits by and against national banks brought in the district of their residence," 371 U. S., at 560. And (g) the Act of February 18, 1875, ch. 80, 18 Stat., pt. 3, p. 320, added to § 5198 of the Revised Statutes of 1873 "provisions substantially identical to § 57 of the 1864 Act," [7] and thus, "for a second time Congress specified the precise federal and state courts in which suits against national banks could be brought," 371 U. S., at 560–561.

The conclusions drawn by the Court from *Langdeau*'s review of the history of § 94's state-court venue provision were the obvious ones already noted: "[N]ational banks may be sued only in those state courts in the county where the banks are located," 371 U. S., at 561, and "the statute must be given a mandatory reading," *id.*, at 562. This is not to say, however— and the Court in *Langdeau* did not say—that § 94's pivotal word "located," in a branch banking context, would mean and be restricted to the place designated in the bank's charter. What the Court in *Langdeau* specifically held was that § 94 prevailed, on a plea of privilege, over a state venue statute that would have permitted suit in an outside county where a receivership proceeding for an allegedly defrauded insurance company was pending. *Langdeau* in no way hampers our consideration of the branch banking problem.

There can be little question, as petitioner argues, Brief for Petitioner 14, that at the time the 1864 Act was passed, the activities of a national bank were restricted to one particular

---

[7] The addition was:

"That suits, actions, and proceedings against any association under this title may be had in any circuit, district, or territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

See *Third Nat. Bank* v. *Impac, Ltd.*, 432 U. S. 312, 316–318 (1977); *id.*, at 325–327 (dissenting opinion).

location. That Act's provisions to the effect that the organization certificate (as 12 U. S. C. § 22 also requires today) shall specifically state "the particular county and city, town, or village" of its place of operations, 13 Stat. 101, and that the bank's "usual business shall be transacted at an office or banking house located in the place specified in its organization certificate," 13 Stat. 102 (cf. 12 U. S. C. § 81), indicated as much. National banks (other, perhaps, than those that originally were state banks with existing branches) were not permitted to engage in branch banking until 1927, when the McFadden Act, 44 Stat., pt. 2, p. 1224, was passed; moreover, the McFadden Act allowed national banks to "establish" branches only if permitted by state law, and only "within the limits of the city, town, or village in which said association is situated," *id.*, at 1228. It was not until 1933 that Congress approved, upon specified conditions, national bank branches beyond the place named in the charter. 48 Stat. 189–190.

Petitioner argues that since a national bank in 1864 was permitted only one "location," namely, that specified in the charter, "there is no statutory basis for interpreting the word 'located' as having multi-county reference." Brief for Petitioner 15. It says that one may not presume "that the Congress anticipated by some sixty years the advent of multi-county branch banking and formulated its statutory language accordingly." *Ibid.*

We need not travel that far analytically in determining congressional intent. It suffices to stress that Congress did not contemplate today's national banking system, replete with branches, when it formulated the 1864 Act; that there are no sure indicators of 1864 congressional intent with respect to a banking system that did not then exist; and that prior to 1927, and, indeed, prior to 1933, Congress had no occasion whatsoever to be concerned with state-court venue other than at the place designated in the bank's charter.[8] Throughout

---

[8] Petitioner argues that the failure of Congress to change § 94 when it

this early period, the words "established" and "located" led to the same ultimate venue result.

Nevertheless, the two words are different. One must concede that a federal judicial district, which the statute associates with the word "established," is not the same as the geographical area that delineates the jurisdiction of a state court, which the statute associates with "located." Whatever the reason behind the distinction in the words, it does exist, and we recognize it. In fact, in *Langdeau,* the Court did not coalesce the two terms but said that "national banks may be sued only in those state courts in the county where the banks are located," 371 U. S., at 561.

There is no enduring rigidity about the word "located." What Congress was concerned with was the untoward interruption of a national bank's business that might result from compelled production of bank records for distant litigation. *Charlotte Nat. Bank* v. *Morgan,* 132 U. S., at 145; *Mercantile Nat. Bank* v. *Langdeau,* 371 U. S., at 561–562, n. 12. That concern largely evaporates when the venue of a state-court suit coincides with the location of an authorized branch.[9] It is also diminished by improvements in data processing and transportation.[10]

---

approved branch banking demonstrates a congressional intent to restrict venue to the charter county. Brief for Petitioner 15–16, n. 28. We do not find this argument persuasive; petitioner offers nothing to the effect that Congress even considered venue when it authorized branch banking in 1927 and 1933.

[9] One may argue, of course, that the concern also should evaporate with respect to a federal suit at the place of the branch. That issue is not before us. In any event, as has been stated above, we have no occasion here to disturb the consistent authority relating to federal venue.

[10] This interpretation of § 94 will not inconvenience the bank or unfairly burden it with distant litigation in violation of any congressional policy. We recognize that Congress adopts venue provisions in part for the convenience of the parties. See *Olberding* v. *Illinois Central R. Co.,* 346 U. S. 338, 340 (1953) (interpreting 28 U. S. C. § 1391 (a)). Litigation of this

## V

Finally, we do not share petitioner's proposition that, for still another reason, the words "established" and "located," although different, may not have dichotomous meanings. Petitioner notes the appearance of "any" and "the" in § 94, and argues that the former suggests a potential plurality, whereas the definite article modifies nouns that are singular and denote a unique geographical status. Petitioner then asserts that from this grammatical construction of the statute it may be concluded that if Congress had intended a plurality of places where a national bank could be located, it would have substituted "any" for "the," or at least would have employed plural nouns rather than singular ones.

This dissection of the face of the statute is possible argumentation. But petitioner does not proffer it as anything more than that. It is certainly not persuasive in itself, and our experience with the inexactitude of congressional language, an inexactitude that perhaps often is inevitable—see, for example, *Buckley* v. *Valeo,* 424 U. S. 1 (1976); *Chemehuevi Tribe of Indians* v. *FPC,* 420 U. S. 395 (1975)—does not convince us that much weight can be attached to the use of "any" and "the," respectively, in § 94.

The judgment of the Court of Appeals of the State of Georgia is

*Affirmed.*

MR. JUSTICE STEWART, concurring.

The Court's opinion, despite its disclaimer, may be read by some to imply approval of the view that, for purposes of

---

dispute in De Kalb County inconveniences no one to any real degree. Respondent chose to file his suit there. Petitioner has established a permanent business there, taking advantage of the commerce of the community. Its attorneys have their offices in adjoining Fulton County, part of the Atlanta metropolitan area. Litigation in De Kalb County cannot be more inconvenient than litigation in Chatham County, the place of chartering, some 200 miles away.

federal-court venue under 12 U. S. C. § 94, a national bank is "established" only in the district that includes its charter county. See *ante,* at 39–41, 44, 45. I have serious doubt that the cases so holding were correctly decided,* and in any event this question remains an open one here.

Today we decide only that for purposes of state-court venue under § 94 a national bank is "located" in any county in which it has a branch bank. There is no need in this case to consider the meaning of the word "established" in § 94, or to draw any contrast between the words "established" and "located." It is upon this understanding that I join the opinion of the Court.

---

* The first case to decide the question, *Leonardi* v. *Chase Nat. Bank,* 81 F. 2d 19 (CA2), relied primarily on a First Circuit decision holding that a national bank chartered in New York was not "located" in Puerto Rico, where it operated a branch bank, for purposes of taxation of the bank's shares, *National City Bank* v. *Domenech,* 71 F. 2d 13, and on the general provision for corporate venue which at that time limited venue to the district of incorporation. See 1 Moore's Federal Practice ¶ 0.141 [4], p. 1352 (2d ed. 1977). Neither analogy compelled the Second Circuit's conclusion. Subsequent cases have not amplified *Leonardi's* reasoning. See *United States Nat. Bank* v. *Hill,* 434 F. 2d 1019 (CA9), and cases cited therein.