**ORACLE WETMORE COMPANY,
Plaintiff,**

v.

**CITIBANK, N. A., Defendant.**

**No. C81–778.**

United States District Court,
N. D. Ohio, E. D.

Feb. 26, 1982.

On Motion for Reconsideration or in Alternative to Provide for Interlocutory Appeal, April 5, 1982.

Sander Schwartz, Daniel R. McCarthy, McCarthy, Lebit, Crystal, Kleinman & Gibbons, Cleveland, Ohio, for plaintiff.

Ellis McKay, Marilyn Shea-Stonum, Ellen L. Keller, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

On April 16, 1981, Oracle Wetmore Company (hereinafter referred to as Oracle Wetmore) filed a complaint in this Court that prayed for damages from Citibank, N. A. (hereinafter referred to as Citibank) for its alleged breach of a loan commitment. Subject matter jurisdiction is based on diversity of citizenship, under 28 U.S.C. § 1332 (1976). On June 10, 1981, Citibank filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, to transfer the case to the District Court for the Southern District of New York pursuant to 28 U.S.C. § 1406(a) (1976). The basis of its motion is that venue is improper in the Northern District of Ohio.

Citibank argues that, according to the venue provision of the National Bank Act, 12 U.S.C. § 94 (1976), the Southern District of New York, which includes the locality in which Citibank is chartered, is the only district court that has proper venue. In opposition, Oracle Wetmore maintains (1) that venue under this provision is properly in the Northern District of Ohio, or, in the alternative, (2) that Citibank has waived its privilege under the Act by, in effect, maintaining a branch office in this area.

The parties stipulated to several facts, and the Court held an evidentiary hearing on the issue on November 24–25, 1981. Having reviewed the extensive briefs filed by both parties, the hearing record, the stipulations of fact, and the relevant law, the Court grants Citibank's motion to transfer the case to the Southern District of New York for the reasons set out below.

## I. FACTUAL BACKGROUND AND THE PARTIES' ARGUMENTS

In arguing the venue question, the parties discussed a web of companies and their subsidiaries. To resolve the issue, however, the Court must avoid entanglement in the web and focus on the specific parties to the dispute: Oracle Wetmore and Citibank.

### A. *The Complaint*

According to the facts stipulated by the parties, Oracle Wetmore is an Arizona limited partnership the general partner of which is, according to the complaint, an Ohio corporation with its principal place of business in Cleveland. The general partner is a second-tier subsidiary of Forest City Enterprises, which has its principal offices in the Northern District of Ohio. Citibank, a subsidiary of Citicorp, is a national banking association, which, according to its charter, is located in the City and County of New York. Stipulations of Fact but not Relevancy ¶¶ 1, 2, 6 (hereinafter referred to as Stipulations).

During the summer, fall, and winter of 1979, employees and officers of Citibank and of Forest City Enterprises and its subsidiaries met in New York and Cleveland to discuss "the prospect of providing construction financing for a shopping mall in Tucson, Arizona to be developed by Oracle Wetmore Company." *Id.* ¶ 5; *see id.* ¶¶ 3–13. On or about February 6, 1980, in New York, Oracle Wetmore and Citibank executed the loan commitment which is at the heart of this dispute. *See id.* ¶ 14.

Oracle Wetmore claims that Citibank failed to perform its obligations under the loan commitment and breached the commitment. As a result, Oracle Wetmore alleges that it suffered damages of $11,183,550.

B. *The Motion to Dismiss or to Transfer*

Citibank maintains that under the National Bank Act, 12 U.S.C. § 94 (1976),[1] venue is proper only in the district within which a national bank is "established." And, the defendant claims, according to almost all the courts that have decided this issue, a national bank is "established" only in the location specified by its charter, in this case, the City and County of New York.

Oracle Wetmore, in opposition, contends that, under 12 U.S.C. § 94, Citibank "is established sufficiently within the Northern District of Ohio to give rise to venue in this district." Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss or in the Alternative, to Transfer Case Pursuant to 28 U.S.C. § 1460(a) [*sic*] at 1–2. According to the plaintiff, although Citibank is neither authorized to do business in Ohio nor qualified to do business in Ohio, and has not designated an agent for service of process in Ohio, it is "established" in the Northern District of Ohio because it is, through the offices of other Citicorp subsidiaries, branch banking here. *Id.* at 2–3. Oracle Wetmore argues that the earlier cases on this issue are no longer apposite because of the great changes that the banking industry has recently undergone. *Id.* at 4.

In the alternative, the plaintiff contends that, "by its large establishment, its large advertising program and its active solicitation of business and conduct of business within this jurisdiction, Citibank, N.A. has

impliedly consented to the venue within this district." *Id.*

Citibank denies that it has a branch bank within this judicial district or that the presence of other subsidiaries of Citicorp would "establish" Citibank here. It refutes that it has waived the venue privilege, arguing that, even if Citibank were branch banking here, such activity, without more, has not been held to constitute waiver of the section 94 venue privilege. The transaction which is the basis of the dispute, the defendant has stated, was handled by Citibank's New York office, and thus has no connection with this district. Reply Brief of Citibank, N.A. to Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss at 3–4.

## II. BRANCH BANKING AND VENUE UNDER THE BANKING LAWS

■ Although the venue provision of the National Bank Act is mandatory, not permissive, *Mercantile National Bank v. Langdeau,* 371 U.S. 555, 562, 83 S.Ct. 520, 524, 9 L.Ed.2d 523 (1963), it has been held to be "a privilege personal to the bank, and to be subject to waiver," *Citizens & Southern National Bank v. Boughas,* 434 U.S. 35, 38, 98 S.Ct. 88, 90, 54 L.Ed.2d 218 (1977). Thus, absent a showing that Citibank is "established" here or that Citibank waived its privilege, the case cannot be maintained here. Both of Oracle Wetmore's arguments in opposition to the motion to dismiss or transfer for improper venue—(1) that Citibank is "established" here or (2) that Citibank has waived its venue privilege under section 94—are based primarily upon the premise that Citibank operates a branch office within this district.[2]

---

1. The venue provision of the National Bank Act provides:

 Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases.

 12 U.S.C. § 94 (1976).

2. Oracle Wetmore bases its waiver argument also upon Citibank's extensive activity in the Cleveland market, from its New York office and the Citicorp subsidiary Cleveland offices. In particular, it contends: "The facts are that the Cleveland office engages in activities on behalf of itself and other 'segments' of the Citibank organization. (Tr. 242) The Cleveland bank is supervised without compensation by Citibank personnel. (Stipulations 21, 22, 23; Tr. 246). Indeed, personnel of Citibank and its purportedly separate segments are readily in-

## 1162

### A. Branch Banking

■ Oracle Wetmore asks this Court to find that Citibank has a branch located within the area encompassed by the Northern District of Ohio. Its argument hinges on two cases, *Independent Bankers Association v. Board of Governors of the Federal Reserve System*, 516 F.2d 1206 (D.C.Cir. 1975), and *Connecticut Bankers Association v. Board of Governors of the Federal Reserve System*, 627 F.2d 245 (D.C.Cir.1980), but the plaintiff's reliance on these cases appears misplaced.

The National Bank Act holds a branch of a national bank "to include any branch bank, branch office, branch agency, additional office, or any branch place of business located in any State or Territory of the United States or in the District of Columbia at which deposits are received, or checks paid, or money lent." 12 U.S.C. § 36(f) (1976). Section 36 prescribes the only conditions under which national banks may establish branches, and provides: "No branch of any national banking association shall be established or moved from one location to another without first obtaining the consent and approval of the Comptroller of the Currency." *Id.* § 36(e).

The Bank Holding Company Act, 12 U.S.C. §§ 1841 *et seq.* (1976 & Supp. IV 1980), provides that bank holding companies may, in limited circumstances file an application with the Federal Reserve Board to enter businesses that provide services closely related to banking. *See Connecticut Bankers Association v. Board of Governors of the Federal Reserve System*, 627 F.2d at 249; 12 U.S.C. § 1843. Persons who object to the application may file their objections with the Board, which, after formal or informal hearings, decides whether the company may enter the business. *See Connect-*

*icut Bankers Association v. Board of Governors of the Federal Reserve System*, 627 F.2d at 250–51. "While fully recognizing that bank holding companies would be permitted to engage in activities that were precluded to a bank, Congress sanctioned bank holding company entry into geographical areas where the company's subsidiary banks were excluded by stringent branch banking laws." *Id.* at 252.

Citicorp Industrial Credit, Inc. (hereinafter referred to as CIC) and Citicorp (U.S.A.), Inc. (hereinafter referred to as CUSA), are both second-tier subsidiaries of Citicorp organized pursuant to the Bank Holding Company Act. They maintain offices in Cleveland, Ohio, and have appointed statutory agents for service of process. *See* Stipulations, *supra,* ¶¶ 18 & 19.

Neither of the parties claims that Citibank has, with the consent and approval of the Comptroller of the Currency, pursuant to 12 U.S.C. § 36, established a branch within the Northern District of Ohio. Oracle Wetmore does maintain, however, that CIC and CUSA operate, in effect, as a branch of Citibank. *See* Post-hearing Brief at 7–8.

Oracle Wetmore argues that courts have deemed a related corporation to be a branch office of a bank under circumstances similar to those here. But the cases on which it relies do not establish judicial standards for finding that a bank holding company is involved in branch banking. Instead they review the issue of whether a person who objects to an application that a bank holding company files with the Federal Reserve Board to set up offices for a subsidiary, has a statutory right to a formal hearing before the Board, pursuant to the Bank Holding Company Act.

---

terchangeable [*sic*] (Tr. 251–2) The Cleveland office regularly solicits and services Citibank loans and provides related financial services such as money transfer and balance reporting through the facility of a Citibank computer located in the Cleveland office. Defendant in his opening statement argues that the Cleveland office is 'alot of things, but it isn't a branch' of Citibank [*sic*] (Tr. 13) The short answer to that is that the Cleveland office is

managed by Citibank as if it were a branch. It serves to solicit and produce loans for Citibank as if it were a branch, it performs financial services for Citibank, as if it were a branch. Regardless of how Citibank may attempt to characterize its relationship, the inescapable conclusion compelled by the evidence here is that the Cleveland offices are in fact branches of Citibank." Post-hearing Brief at 7–8; *see id.* at 4–6.

Both *Connecticut Bankers* and *Independent Bankers* involved an appeal from a decision by the Board of Governors of the Federal Reserve System, pursuant to the Bank Holding Company Act, not to hold a formal evidentiary hearing on the issue of whether proposed offices of a subsidiary of a bank holding company would amount to branch banking, in violation of state and federal statutes. In *Connecticut Bankers*, Citicorp had submitted an application to the Federal Reserve Board of New York in which it proposed that a Citicorp subsidiary, Person-to-Person Financial Center of Connecticut, Inc., establish an office in Westport, Connecticut. The issue of alleged branch banking arose in the context of proposed offices, not offices that were already operating.

The Connecticut Bankers Association filed objections to the application, the first of which was that the interrelationship of Citicorp, Citibank, Nationwide, and Person-to-Person would "constitute a unitary operation amounting to branch banking by Citibank in violation of state and federal statutes." *Connecticut Bankers Association v. Board of Governors of the Federal Reserve System*, 627 F.2d at 247; *cf. Independent Bankers Association v. Board of Governors of the Federal Reserve System*, 516 F.2d at 1210 (appeal based on, *inter alia*, (1) statutory right to evidentiary hearing before the Board and (2) whether offices proposed by a bank holding company would constitute illegal branch banking).

The Board approved Citicorp's application and denied the bankers association's request for a formal hearing. Having reviewed the record, the D.C. Circuit affirmed this decision and found, "There is not a scrap of evidence—as contrasted with mere possibility or speculation—which would be indicative of unlawful branch banking to Citibank." *Connecticut Bankers Association v.*

*Board of Governors of the Federal Reserve System*, 627 F.2d at 252. The court was not making a finding *de novo* however; it was only reviewing the Board's finding. In *Independent Bankers*, when the Court reversed the Board order denying a hearing on objections to the proposed bank holding company subsidiary, it did not then review the facts *de novo*, but remanded the case back to the Board for a hearing. *Independent Bankers Association v. Board of Governors of the Federal Reserve System*, 516 F.2d at 1210.

These cases, and the statute they interpret, lend no support for this Court itself to find that Citibank is branch banking through the Citicorp subsidiaries. If the Court made such a finding, it would, in effect, be saying that Citicorp is in violation of state and federal laws, even though the parties stipulated that Citicorp established its subsidiaries in accordance with federal law, *see* Stipulations, *supra*, ¶ 18. Such a finding would not only conflict with the congressional intent behind the Bank Holding Company Act to permit bank holding companies to enter areas that national banks may not enter; it also appears to be precluded by the procedures Congress adopted for making such a determination before a bank holding company opens subsidiary offices. The Court, therefore, does not make a finding that Citibank is operating a branch within this district.

### B. *Where National Banks Are Established*

■ Since Citibank has not been found to have a branch office within the Northern District of Ohio, the Court need not consider whether, in *Citizens & Southern National Bank v. Bougas*, 434 U.S. 35, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977), the Supreme Court was suggesting that a national bank is "established", under 12 U.S.C. § 94, where it has branches.[3] Citibank is not

---

3. In *Citizens & Southern National Bank v. Bougas*, 434 U.S. at 39, 98 S.Ct. at 91, the Supreme Court noted that lower courts have nearly unanimously held a national bank to be " 'established' only in the federal district that encompasses the place specified in the bank's charter," and it also made mention of scholars

critical of this view. The Court specifically stated however, "We are not concerned in the present case ... with this federal aspect of venue, and we have no occasion here to review these rulings." *Id.*

The Court went on to hold that in actions against national banks, state court venue,

"established" in this district for purposes of venue pursuant to 12 U.S.C. § 94.

## C. Waiver of the Venue Privilege

Oracle Wetmore's last argument is that Citibank waived its venue privilege under 12 U.S.C. § 94, either because it operated a branch office in Cleveland, or because Citibank was a substantial competitive force here and CUSA had appointed a statutory agent for service of process here. It contends that although courts have held branch banking to constitute "per se waiver" for "transactions which arose out of activity within the branch, neither the existence of a branch nor some 'nexus' is necessary to find a waiver. Such a set of circumstances is a conincidence [sic] not a prerequisite." Post-hearing Brief at 9. No cases, however, support a finding of waiver in circumstances like those present here.[4]

■ To conclude that a national bank has waived its venue privilege under 12 U.S.C. § 94, a court must find "a voluntary and intentional relinquishment or abandonment of a known existing right or privilege . . . ." Buffum v. Chase National Bank, 192 F.2d 58, 60–61 (7th Cir. 1951); accord,

International Travelers Cheque Co. v. Bankamerica Corp., 660 F.2d 215, 222 (7th Cir. 1981). The plaintiff has failed to show any such action by Citibank. Citibank did not operate a branch within this district,[5] and its alleged substantial competitive force here is insufficient to constitute waiver.

■ That CUSA appointed a statutory agent for service of process does not justify an inference that Citibank waived the venue privilege. Since Citibank has not appointed such an agent in this district, a more reasonable inference would be that Citibank intended not to waive the venue privilege. Cf. Dawson v. First National Bank, 453 F.Supp. at 91 (appointment of statutory agent for service of process is unequivocal action showing intent to consent to be sued).[6]

Oracle Wetmore has also tried to show waiver by noting that Citibank has used the courts in Ohio to bring actions on its own behalf. Courts have found waiver in such circumstances only when the case against the national bank is directly related to a case the national bank has brought in that court. See, e.g., International Travelers Cheque Co. v. Bankamerica Corp., 660 F.2d

---

which is also governed by 12 U.S.C. § 94, is proper where the bank has branches as well as where it is chartered. Id. at 44, 98 S.Ct. at 93. The Court distinguished the statutory language regarding federal and state court venue, but also suggested (without deciding) that the same policy reasons for holding that state court venue is proper wherever a national bank has a branch would compel the same result in a case involving federal venue. Id.

Justice Stewart, in a concurring opinion, stated that whether a national bank is "established" only in the district that includes the place where it is chartered is an open question. Id. at 45–46, 98 S.Ct. at 94.

Some federal courts have found, in Bougas, an encouragement to find national banks to be established in districts in which they have a branch. See, e.g., Tradewinds, Inc. v. Citibank, N.A., No. 81–1424 (3d Cir., filed July 27, 1981) Dawson v. First National Bank, 453 F.Supp. 88, 89 (D.Ariz.1978). But see Robinette v. Griffith, 483 F.Supp. 28, 33 (W.D.Va.1979). But no court has made such a finding where the national bank simply had some business within the district.

4. The plaintiff relies on National Bank of North America v. Associates of Obstetrics, 425 U.S. 460, 96 S.Ct. 1632, 48 L.Ed.2d 92 (1976) for this

contention. But the Supreme Court, in this case, held only that the venue provision in 12 U.S.C. § 94 is mandatory, not permissive, and did not reach the waiver issue. See id. at 461, 96 S.Ct. at 1633. But see Dawson v. First National Bank, 453 F.Supp. at 91 (where national bank qualifies to do business in a state and has designated a statutory agent for service of process, a court might find waiver).

5. The plaintiff has not shown that Citibank was acting, in regard to the loan commitment, through the Citicorp subsidiary offices, CUSA and CIC, in Cleveland. And since it has not shown that Citibank has a branch in this district, the Court does not reach the issue of when the existence of a branch constitutes waiver of the venue provision. See, e.g., Robinette v. Griffith, 483 F.Supp. at 34–35.

6. In Fisher v. First National Bank, 338 F.Supp. 525, 531 (S.D.Iowa 1972), the court held, "The creation of a wholly owned subsidiary to do business in Iowa indicates an intention to preserve, rather than waive, the bank's right to be sued in Nebraska [where it is chartered]."

at 221; *Frischling v. Priest Oil & Gas Corp.,* 524 F.Supp. 1107, 1109 (N.D.Ill.1981).

### III. CONCLUSION

Oracle Wetmore may be correct in asserting that the venue provisions of the National Bank Act have become outdated in light of recent developments in the banking industry. The Supreme Court has noted that scholars have strongly criticized the venue provisions and that the purpose of the provision is perhaps no longer being served. *See Citizens & Southern National Bank v. Bougas,* 434 U.S. at 35, 44, 98 S.Ct. 88, 93, 54 L.Ed.2d 218. But many courts have pointed out that any change in the provisions must come from Congress. *See, e.g., Robinette v. Griffith,* 483 F.Supp. at 33 & n.5; *Fisher v. First National Bank,* 338 F.Supp. 525, 531 (S.D.Iowa 1972).

Since the plaintiff has failed to show either that Citibank is established in this district or that it has waived its venue privilege, the defendant's motion to transfer the case, pursuant to 28 U.S.C. § 1406(a),[7] is granted.

IT IS SO ORDERED.

## ON MOTION FOR RECONSIDERATION

On February 26, 1982, the Court granted the defendant's motion to transfer this case to the Southern District of New York, pursuant to 28 U.S.C. § 1406(a) (1976). The plaintiff, Oracle Wetmore Company, filed a Motion for Reconsideration or in the Alternative to Modify Order to Provide for Interlocutory Appeal, on March 5, 1982. For the reasons set out below, the Court denies the plaintiff's motion.

 In opposition to the motion to transfer, the plaintiff had argued that the Court should find that Citibank operates a branch within the Northern District of Ohio and that thus either (1) it is "established" here for purposes of the venue provision of the National Bank Act, 12 U.S.C. § 94 (1976) or (2) it has waived its venue privilege under the Act. The Court concluded, *inter alia,* that, under the circumstances,[1] it could not make a finding that Citibank was operating a branch here.

In support of the motion for reconsideration, the plaintiff again argues that "federal courts, on numerous occasions, have applied the definition of a 'branch' contained in § 36 to determine the legality of the establishment or operation of a banking office. *First National Bank v. Dickinson,* 396 U.S. 122, 90 S.Ct. 337 [24 L.Ed.2d 312] (1969); *St. Louis County National Bank v. Mercantile Trust Company, N.A.,* 548 F.2d 716 (8th Cir. 1976); *Cheshire National Bank v. Smith,* 427 F.Supp. 277 (D. N.H. 1977)."

But these cases provide no stronger support for the Court to make such a finding than the cases it cited in opposition to the original motion. In *First National Bank v. Dickinson,* 396 U.S. at 129, 90 S.Ct. at 341, the Comptroller of the State of Florida had notified First National Bank that two services it was providing to its customers, with the approval of the Comptroller of the Currency, amounted to branch banking in violation of Florida law and requested the bank to cease and desist these operations. First National then sued in U.S. District Court seeking an injunction against the Florida Comptroller. The issue thus arose before the Supreme Court in the context of a state bank regulator trying to stop operations of a national bank that had been approved by the Comptroller of the Currency; the issues

---

**7.** 28 U.S.C. § 1406(a) provides:

 The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

The Court "deems it appropriate and in the interest of justice" to transfer this case to the Southern District of New York. *See Fisher v. First National Bank,* 338 F.Supp. at 531.

**1.** Neither of the parties claimed that Citibank had sought the consent of the Comptroller of the Currency, pursuant to 12 U.S.C. § 36 (1976), to establish branches within the Northern District of Ohio. And they both stipulated that the Cleveland offices of Citicorp subsidiaries had been properly organized pursuant to the Bank Holding Company Act.

were framed in terms of whether the operations were legal.

In *St. Louis County National Bank v. Mercantile Trust Company, N.A.*, 548 F.2d at 717, St. Louis County National Bank had challenged, as illegal branches, the operation of two offices of Mercantile that had been approved by the Comptroller of the Currency. St. Louis County National Bank had joined the Comptroller of the Currency as a defendant. In *Cheshire National Bank v. Smith*, 427 F.Supp. at 278, the plaintiffs were seeking to overturn a decision by the Comptroller of the Currency which, *inter alia*, approved an expansion of services by another national bank. The Court was directly reviewing a decision of the Comptroller of the Currency.

In all three cases, the plaintiffs, state bank regulators or other national banks, were challenging a decision by the Comptroller of the Currency regarding the operations of offices of a national bank. In each case, the specific issue was whether the offices should be allowed to operate. The dispute between Oracle Wetmore and Citibank, and the venue issue that is presently before the Court, are not analogous to those cases. As the Court noted in its opinion, by finding that the two Citicorp subsidiary offices are branches of Citibank, the Court would, in deciding a venue issue, effectively be holding that Citicorp could not continue to operate these offices in Cleveland. The Court does not find that, under these circumstances, it is appropriate to make such a finding.

Even assuming, *arguendo*, that the Court could and would make such a finding, it still would not find venue properly in this district. Citibank is not established here. *See Citizens & Southern National Bank v. Bougas*, 434 U.S. 35 at 39, 98 S.Ct. 88, 91, 54 L.Ed.2d 218; *Robinette v. Griffith*, 483

F.Supp. 28 at 33. And because the plaintiff has failed to show that CIC or CUSA had anything to do with the transaction at the heart of this dispute, there are no grounds to find that Citibank has waived the venue privilege. *See Buffum v. Chase National Bank*, 192 F.2d 58 (7th Cir. 1941); *see, e.g., Robinette v. Griffith*, 483 F.Supp. at 35.

Therefore, the plaintiff's motion for reconsideration or modification of the order to provide for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1976) is denied.[2]

IT IS SO ORDERED.

---

**2.** The plaintiff claims that this case is similar to *Allen v. Wachovia Bank & Trust Co., N.A.*, 470 F.Supp. 18 (E.D.N.C. 1978) and *Robinette v. Griffith*, in which the district courts had granted § 1292(b) certification. But in both these cases, the courts had found waiver of section 94 rights based upon the activities of acknowledged branches that were directly related to

the disputes between the parties. *Robinette v. Griffith*, 483 F.Supp. at 35; *Allen v. Wachovia National Bank*, 470 F.Supp. at 24. Unlike those cases, the Court here does not find that the issues involved in this case involve a controlling question of law as to which there is substantial ground for difference of opinion.