Martha J. ROBINETTE, Plaintiff,

v.

Clifford GRIFFITH, t/a Griffith Auto Repair and Virginia National Bank, Defendant.

Civ. A. No. 79–0066(D).

United States District Court, W. D. Virginia, Danville Division.

Sept. 10, 1979.

Charles M. Stone, Stone, Joyce, Worthy & Stone, Martinsville, Va., for plaintiff.

J. Randolph Smith, Jr., Martinsville, Va., for Griffith.

Douglas K. Frith, Martinsville, Va., Glen W. Hampton, Kaufman & Oberndorfer Norfolk, Va., for Virginia Nat. Bank.

## MEMORANDUM OPINION

DALTON, District Judge.

On November 14, 1978 plaintiff Martha J. Robinette purchased a 1970 Toyota automobile from Clifford Griffith trading as Griffith Auto Repair. To complete this sale, defendant Griffith arranged for financing with Virginia National Bank. Plaintiff has filed this suit alleging that in arranging

such credit defendants Griffith and Virginia National Bank failed to comply with the Regulation Z promulgated under the Consumer Protection Act (15 U.S.C. 1601 *et seq.*) Jurisdiction is claimed under 15 U.S.C. § 1640(e).

Plaintiff also alleges that defendant Griffith fraudulently failed to disclose the true mileage on this automobile or to disclose that the true mileage was unknown to him as required by the Federal Motor Vehicle Information and Cost Savings Act (15 U.S.C. § 1901 *et seq.*) Jurisdiction is claimed pursuant to 15 U.S.C. § 1989(b).

Defendant Griffith has answered and filed a motion to dismiss count one of the complaint alleging that it fails to state a claim against him upon which relief can be granted and that it improperly joins him as a party defendant. Griffith moves that count two also be dismissed for failure to state a claim upon which relief can be granted and for failure of the complaint to aver the circumstances constituting fraud with the particularity required by Rule 9(b). Defendant Griffith then filed a cross claim against defendant Virginia National Bank asserting that Virginia National Bank handled all disclosures required by the Federal Truth-in-Lending Act and that Virginia National Bank may be liable to defendant Griffith on any claims asserted against them by plaintiff.

Defendant Virginia National Bank has responded to plaintiff's complaint with a motion for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure contending that count one of the complaint is deficient in that it fails to set forth facts apprising defendant of the nature of plaintiff's claim and due to such vagueness defendant is unable to prepare a responsive pleading. Defendant also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) asserting that venue is improper under 12 U.S.C. § 94. Defendant requested and was granted an extension of time to answer Griffith's cross claim until the court has ruled on its pending motion. The motions filed by defendants raise multiple legal and factual issues, and the court will consider these individually.

### I. *Defendant Griffith's Motions*

▮▮▮▮ Defendant moved for dismissal of count one for failure to state a claim upon which relief can be granted and for misjoinder of defendant Griffith as a party to count one. Although the exact basis of plaintiff's claim is not apparent, a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. *Johnson v. Mueller*, 415 F.2d 354 (4th Cir. 1969). The prohibitions of the Consumer Protection Act as promulgated in Regulation Z were enacted for the purpose of assuring that every customer who has need for consumer credit is given meaningful information with respect to the cost of that credit. 12 C.F.R. § 226.1(a)(2). The disclosure provisions of the regulation apply to all persons who in the ordinary course of business regularly extend, or offer to extend, or arrange, or offer to arrange, for the extension of consumer credit. 12 C.F.R. § 226.1(a)(1). These protective provisions have been held to apply to automobile dealers in some circumstances. *See, e. g., Gonzales v. Schmerler Ford*, 397 F.Supp. 323 (D.C.Ill.1975). The court is thus unable to determine as a matter of law that plaintiff has failed to state a claim upon which relief can be granted, and defendant's motion must be denied. Since defendant may be subject to liability under count one, his joinder as a party defendant cannot be said to be improper. Rule 20(a) Federal Rules of Civil Procedure. Although defendant Griffith's motion to dismiss is hereby denied, the court expressly reserves the right to reconsider the motion after the case is fully developed on its merits.

▮▮▮▮ Defendant Griffith has also moved to dismiss count two for failure to state a claim upon which relief can be granted. Plaintiff has charged that defendant failed to disclose the true mileage on the automobile or that the mileage on the automobile

was unknown to him. These allegations, if true, state a claim under 15 U.S.C. § 1988. However, to recover damages for this alleged violation, 15 U.S.C. § 1989 requires that defendant's violation must be with intent to defraud. Defendant contends that plaintiff's pleading is deficient in that it fails to aver the circumstances constituting fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. This court determines that defendant's motion to strike count two pursuant to Rule 9(b) is well taken. The plaintiff's complaint alleges none of the elements of fraud or circumstances which surrounded defendant's violation. A bare allegation of fraud does not satisfy the pleading requirements of Rule 9(b). See generally, 2A *Moore's Federal Practice* ¶ 9.03 (1978). Rule 9(b) is applicable to all claims of fraud including those in suits brought pursuant to § 1989. *Levine v. MacNeil*, 428 F.Supp. 675 (D.C.Mass.1975). Therefore, the court will grant defendant's motion to dismiss count two for failure to comply with Rule 9(b) while allowing plaintiff leave to amend his complaint, if possible, to aver circumstances constituting fraud with the particularity required by Rule 9(b). If the court has not received such pleading within fifteen days of this opinion, count two of plaintiff's complaint will be dismissed.

II. *Defendant Virginia National Bank's Motions*

Defendant Virginia National Bank's motion to dismiss for lack of proper venue presents a difficult legal issue never before addressed by this court or the U. S. Fourth Circuit Court of Appeals. Defendant, a national bank with its principal offices in Norfolk, Virginia, alleges venue is improper in this judicial district pursuant to 12 U.S.C. § 94 which states as follows:

Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be *established* or in any State, county, or municipal court in the county or city in which said

association is *located* having jurisdiction in similar cases (emphasis added).

It is now well settled that § 94, despite its permissive language, is mandatory and, therefore, national banks may be sued only in those federal courts in the judicial district where the banks are established. *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976). The lower federal courts appear to be unanimous in holding that a national bank, under § 94, is "established" only in the federal district that encompasses the place specified in the bank's charter. See, *Citizens and Southern Nat'l. Bank v. Bougas*, 434 U.S. 35, 39, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977) and cases cited therein. The venue privilege, however, has been held to be a privilege personal to the bank, and to be subject to waiver. *Citizens and Southern Nat'l. Bank v. Bougas*, 434 U.S. 35, 38, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977); citing *Charlotte National Bank v. Morgan*, 132 U.S. 141, 145, 10 S.Ct. 37, 33 L.Ed. 282 (1889); *Mercantile Nat. Bank v. Langdeau*, 371 U.S. 555, 561, n. 12, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963). The plaintiff and defendant Griffith have submitted a brief in opposition to Virginia National Bank's motion to dismiss for lack of venue and Virginia National has filed reply memorandum supporting its motion. The parties have presented three issues to this court for consideration: 1) whether a national bank with only branch offices in this federal district is "established" here for the purposes of 12 U.S.C. § 94; 2) whether Virginia National Bank by establishing a branch bank in this district has waived the venue restrictions of § 94; 3) whether the cross claim filed against Virginia National Bank for indemnification in this action obviates any venue objections defendant may have under § 94. Before considering these questions, the court will briefly review the history and purposes of Section 94.

The origin of 12 U.S.C. § 94 is traced back to the National Bank Act of 1863, 12 Stat. 665. Section 59 of the 1863 Act, 12 Stat. 681, allowed suits in a federal court only "within the district in which the association was established." At the time this

Act was passed, the activities of a national bank were restricted to one particular location. *Citizens, supra* 434 U.S. at 42–43, 98 S.Ct. 88, 92. National banks (other, perhaps, than those that originally were state banks with existing branches) were not permitted to engage in branch banking until 1927, when the McFadden Act, 44 Stat., pt. 2, p. 1224, was passed. The McFadden Act allowed national banks to "establish" branches only if permitted by state law, and only within the limits of the city, town, or village in which said association was situated. It was not until 1933 that Congress, upon specified conditions, allowed national bank branches beyond the place named in the charter. 48 Stat. 189–190. It is clear that when § 94 was enacted Congress did not contemplate today's national banking system, replete with branches. What Congress was concerned with was the untoward interruption of a national bank's business that might result from compelled production of bank records for distant litigation. *Citizens* at 44, 98 S.Ct. 88; *Charlotte National Bank*, 132 U.S. at 145, 10 S.Ct. 37; *Mercantile National Bank*, 371 U.S. at 561–562, n. 12, 83 S.Ct. 520.

This court is presented with the question of what effect operating a branch of a national bank in a federal judicial district which does not encompass the principal place of business named in the bank's charter has on the venue provisions of 12 U.S.C. § 94. Although some federal courts have been confronted with this issue, neither the full Supreme Court[1] nor the Fourth Circuit[2] has addressed this question. Previous case law, therefore, is only the starting point, not the conclusion, for the resolution of the present case.

■ A. The first question presented is whether a national bank's operation of an authorized branch bank in a foreign jurisdiction "establishes" that bank in the foreign jurisdiction for the purposes of 12 U.S.C. § 94.

Although there is no direct federal authority dictating a holding that operation of an authorized branch bank "establishes" a national bank in the federal judicial district encompassing such branch, the Supreme Court decision in *Citizens & Southern Nat. Bank v. Bougas*, 434 U.S. 35, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977) may provide support for such a view. In that case, the court was faced with interpreting the meaning of the word "located" in the context of the branch banking situation for state venue purposes rather than the meaning of "established" in a federal proceeding. The court held that under 12 U.S.C. § 94 a national bank is "located" in any county in which the national bank conducts its business at an authorized branch. *Id.* at 43–44, 98 S.Ct. 88. Since the court based its decision on an interpretation of statutory language, it found it unnecessary to consider the issue of waiver that was presented in the case. In reaching its decision, the court noted that lower federal courts had unanimously held that a national bank, under § 94, is "established" only in the federal district that encompasses the place specified in the bank's charter and that this position had been subject to scholarly criticism.[3] *Id.* at 39, 98 S.Ct. 88. The

---

1. In *Michigan Nat'l Bank v. Robertson*, 372 U.S. 591, 594–595, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963), Justice Black joined by Justice Douglas in a concurring opinion, stated that a national bank which had done business in another state without opening a branch should have been held to have waived its venue privilege.

2. In *Tanglewood Mall, Inc. v. Chase Manhattan Bank*, 371 F.Supp. 722 (W.D.Va.1974), *aff'd*, 508 F.2d 838 (4th Cir.), *cert. denied* 421 U.S. 965, 95 S.Ct. 1954, 44 L.Ed.2d 452, this court held the removal of a case from state to federal court did not waive the restrictions of § 94. This case is inapposite to the case at bar since it did not involve branch banking. Similarly,

many other cases cited by parties do not involve branch banking situations. Although these cases provide guidance, they are not controlling of this issue.

3. See Steinberg, *Waiver of Venue under the National Bank Act: Preferential Treatment for National Banks*, 62 Iowa L.Rev. 129 (1976); Comment, *Restricted Venue in Suits Against National Banks: A Procedural Anachronism*, 15 Wm. & Mary L.Rev. 179 (1973); Note, *An Assault on the Venue Sanctuary of National Banks*, 34 Geo.Wash.L.Rev. 765 (1966); American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts* 77, 412–413 (1969). See also *Ronson Corp. v.*

court expressly disclaimed deciding the federal venue issue and proceeded to the merits of the state venue provision. In holding that state court venue is proper at the location of a branch bank, the court stated:

> "Nevertheless, the two words ['established' and 'located'] are different. One must concede that a federal judicial district, which the statute associates with the word 'established' is not the same as the geographical area that delineates the jurisdiction of a state court, which the statute associates with 'located.' Whatever the reason behind the distinction in the words, it does exist, and we recognize it." *Id.* at 44, 98 S.Ct. at 93.

The court supported its decision by indicating that its decision did not interfere with the purpose of § 94 in that it would not disrupt a national bank's activities to defend a suit in a foreign jurisdiction noting that this concern "largely evaporates when the venue of a state-court suit coincides with the location of an authorized branch" and that the concern "is also diminished by improvements in data processing and transportation." *Id.* at 44, 98 S.Ct. at 94. The court admitted that such concerns might also evaporate with respect to a federal suit at the place of a branch, but reiterated that the issue was not before the court. *Id.* at 44 n. 9, 98 S.Ct. 88.

Justice Stewart concurred in the opinion upon the understanding that despite language which might be interpreted to the contrary the decision did not imply approval of the view that federal venue exists only in a judicial district encompassing the place

named in a national bank's charter. *Id.* at 46, 98 S.Ct. 88. He also expressed serious doubt that previous cases so holding were correctly decided [4] and perceived the decision as leaving this an open question. At least one federal district court has subsequently viewed this federal venue provision as perhaps an open question. See *Dawson v. First National Bank of Chicago*, 453 F.Supp. 88, 89 (1978). This court, however, is constrained by three factors from holding that a national bank is "established" in any federal judicial district encompassing an authorized branch bank. First, the unanimity of federal court decision holding that a bank is "established" only at the place named in its charter cannot be ignored. Second, the distinction drawn between the words "located" and "established" despite the court's disclaimer must be read as providing some weight of authority favoring maintenance of this distinction. Third, as many courts have previously stated, to interpret the word "established" in another manner may be a usurpation of a legislative function.[5] Thus, if venue is proper in this judicial district, such venue must be found to exist pursuant to either plaintiff's assertion of waiver or third party practice.

■ B. It is well settled that the venue restrictions of 12 U.S.C. § 94 are a privilege personal to national banks and subject to waiver. See *Citizens* 434 U.S. at 38, 98 S.Ct. 88. The difficult question arises in identifying the types of activity which constitute a waiver. In considering the waiver question, this court is not inhibited by the

Liquifin Aktiengesellschaft, 483 F.2d 852, 855 (CA3 1973).

4. In a footnote, Justice Stewart noted: The first case to decide the question, *Leonardi v. Chase Nat. Bank*, 81 F.2d 19 (CA2), relied primarily on a First Circuit decision holding that a national bank chartered in New York was not "located" in Puerto Rico, where it operated a branch bank for purposes of taxation of the bank's shares, *National City Bank v. Domenech*, 71 F.2d 13, and on the general provision for corporate venue which at that time limited venue to the district of incorporation. See 1 Moore's Federal Practice ¶ 0.141[4], p. 1352 (2d ed. 1977). Neither analogy compelled the Second Circuit's conclusion. Subsequent cases

have not amplified Leonardi's reasoning. See *United States National Bank v. Hill*, 434 F.2d 1019 (CA9), and cases cited herein. Id. 434 U.S. at 46, 98 S.Ct. 88.

5. Several courts have stated that such policy arguments regarding 12 U.S.C. § 94 are better addressed to Congress than the courts. *See e. g., Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 156 n. 12, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976); *Mercantile Nat. Bank v. Langdeau*, 371 U.S. 555, 563, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963); *Northside Iron and Metal Co. v. Dobson & Johnson, Inc.*, 480 F.2d 798, 800 (5th Cir. 1973); *United States Nat'l Bank v. Hill*, 434 F.2d 1019, 1020–21 (9th Cir. 1970); *Klein v. Bower*, 421 F.2d 338, 342 (2nd Cir. 1970).

constraints encountered in interpreting the word "established". First, although the clear majority of federal courts hold that branch banking does not waive the federal venue restrictions of § 94, at least three federal courts in recent decisions have held that the branch banking activity did act as a waiver of § 94. Second, as previously noted, neither the full Supreme Court nor the Fourth Circuit has addressed the issue of waiver of federal venue in the context of branch banking. Third, the concept of waiver has been judicially engrafted on § 94. See, *First Nat'l Bank v. Morgan*, 132 U.S. 141, 145, 10 S.Ct. 37, 33 L.Ed. 282 (1889), and the question of what actions constitute such waiver is left to judicial, rather than legislative, determination.

The leading case on the effect of branch banking for waiver of venue purposes is *Helco v. First National City Bank*, 470 F.2d 883 (3rd Cir. 1972). In that case, *Helco* sued the defendant national bank in the federal district court of the Virgin Islands where defendant operated an authorized branch bank. The bank moved to dismiss on the ground that the National Bank Act permitted suit only in the federal district in which it was chartered, that being the Southern District of New York. In reversing the decision of the district court, the Third Circuit Court of Appeals stated:

> In the case at bar, the District Court made no express findings of fact on the question of waiver contenting itself with the bare conclusion that a national bank, by establishing a branch in another location and doing business there, without more, has waived the protection of Section 94. . . . It is axiomatic that a waiver is a voluntary and intentional relinquishment or abandonment of a known right. Here the record is bare of any fact or inference indicating that aside from its operation of a branch bank on St. Thomas, defendant intended to waive its clear right to be sued only in its home district of New York. *Id.* at 885.

The gross unfairness of the decision is apparent.[6] Still, despite heavy criticism heretofore mentioned, this case represents the rule of law in the Second and Ninth Circuits as well, and the Fifth Circuit has supported the position in dictum. See *Leonardi v. Chase National Bank*, 81 F.2d 19 (2d Cir. 1936); *United States Nat'l Bank v. Hill*, 434 F.2d 1019 (9th Cir. 1970); *Northside Iron & Metal Co. v. Dobson & Johnson, Inc.*, 480 F.2d 798 (5th Cir. 1970).

Three major decisions run contrary to the majority view. Each will be discussed below. In *Reaves v. Bank of America*, 352 F.Supp. 745 (S.D.Cal.1973), the plaintiffs purchased an automobile in a suburb of San Diego, and financed part of the purchase price through a loan from a branch bank of the Bank of America. When a controversy arose about the payments, the bank repossessed and seized the vehicle. Plaintiff brought suit seeking damages, and the bank moved to dismiss for lack of venue.

The district judge noted that since the defendant was established in the Northern District of California, suit was precluded in the Southern District unless the privilege had been waived. In determining whether a waiver had occurred, the court found the following factors relevant: 1) Bank of America had sixty-six branch offices in the Southern District; and through them conducted extensive banking activities; 2) all major transactions had occurred in the Southern District; and 3) the bank had sued and had been sued, without objecting to venue, on 443 different occasions from 1964 to 1972 in the San Diego County Superior Court alone. In view of the foregoing, the district judge concluded that the bank had waived its venue privilege. *Id.* at 748–750. In so holding, however, the court made clear that its decision was based on factors in addition to the conduct of branch banking by the defendant.

**6.** In *Citizens*, 434 U.S. at 44 n. 10, 98 S.Ct. at 94 n. 10, the Supreme Court stated: "This interpretation of § 94 will not inconvenience the bank or unfairly burden it with distant litigation in violation of any congressional policy.

We recognize that Congress adopts venue provisions in part for the convenience of the parties. See *Olberding v. Illinois Central R. Co.*, 346 U.S. 338, 340, 74 S.Ct. [83], 85, 98 L.Ed. 39 (1953) (interpreting 28 U.S.C. § 1391(a))."

Two holdings that go further than *Reaves* are *Frankford Supply Co. v. Matteo*, 305 F.Supp. 794 (E.D.Pa.1969) and *Allen v. Wachovia Bank & Trust Co., N. A.*, 470 F.Supp. 18 (E.D.N.C.1978). In *Allen*, the federal district court held that defendant had waived the venue restrictions of § 94 by virtue of the extensive scope of its branch banking operations in the district, including establishment of a number of branch banks in the district, related business operations in the district, extensive commercial advertising, and the use by defendant of the Federal Court of that district to prosecute certain actions. In *Frankford*, the court held that a New Jersey national bank operating a branch in Philadelphia had waived § 94. In reaching this decision, the court found the following factors decisive: that defendant offered full services that were available at all New Jersey locations; that it actively solicited Philadelphia customers; that funds deposited in any office can be withdrawn at any other office, no matter where the records are kept; and that records of account were kept up to date in all offices via computer. In contemplating its decision, this court shares the concern stated by Justice Stewart in *Citizens*[7] that previous cases dealing with 12 U.S.C. have been incorrectly decided.

 Waiver is defined as the intentional relinquishment or abandonment of a known right. It may be expressed formally or *implied* from the facts and circumstances of the particular case, and the burden of proving it is upon the party alleging that such waiver has occurred.[8] This definition is perfectly proper and has been adopted by most, if not all, courts. The difficulty with the majority view is not the definition of the term itself, but rather the application of this definition to the bank venue situation. The majority of court's seems to view their

function as interpreting the law in a manner so as to satisfy Congressional intent.[9] However, this has already been accomplished by the unanimity of decisions holding that a national bank is "established" only at the place specified in the bank's charter. The problem with majority approach is that it fails to comprehend the crucial issue at stake. The question is not whether the venue statute should be repealed by the courts. Rather, the inquiry is what sort of conduct by a national bank constitutes a waiver of the venue privilege. The National Bank Act does not discuss the waiver concept. Since the waiver concept has been judicially created, this court's decision does not interfere with a legislative function. Today, this court holds that by operating an authorized branch in a federal judicial district other than the one encompassing the place of business designated in the bank's charter a national bank impliedly waives the venue restrictions of § 94 at least as to suits arising out of banking activity at that branch.

This decision is premised upon three basic principles.[10] First, the majority view regarding the waiver of venue question frequently denies justice to countless litigants who bring lawsuits against national banks. Second, it is the judiciary, and not Congress, that is solely responsible for determining whether a national bank has waived its venue privilege. Third, the majority view's application of the definition of waiver to the bank venue situation imposes an almost impossible burden upon the plaintiff to prove that there has been a waiver, and should therefore be revised to include the notion that the venue privilege may be waived impliedly.

The adoption of this rule of law in no way conflicts the Congressional purpose in enacting 12 U.S.C. § 94. As stated in *Citi-*

---

7. Justice Stewart stated his concern in his concurring opinion in *Citizens*, 434 U.S. at 46, 98 S.Ct. 88. This passage was cited in footnote 4, supra.

8. *See Buffum v. Chase Nat'l Bank*, 192 F.2d 58, 60–61 (7th Cir. 1951), which is the leading case in defining the concept of waiver.

9. *See, e. g. United States Nat'l Bank v. Hill*, 434 F.2d 1019, 1020–21 (9th Cir. 1970).

10. See Steinberg, Waiver of Venue under the National Bank Act: Preferential Treatment for National Banks, 62 Iowa L.Rev. 129, 144 (1976).

*zens*, Congress was concerned with "untoward interruption of a national bank's business." *Citizens*, 434 U.S. at 44, 98 S.Ct. at 94. However, that concern "largely evaporates when the venue of a state-court suit coincides with the location of an authorized branch", and it is further diminished by "improvements in data processing and transportation." *Ibid.* There is no reason to believe that the court's reasoning in *Citizens* is not equally applicable to suits in federal courts. Thus the court's decision today not only furthers the interest of fundamental fairness, but also comports with Congressional intent. Therefore, for all of the reasons discussed above, the court denies defendant Virginia National Bank's motion to dismiss for improper venue. In accordance with this denial, defendant Virginia National will be given 20 days to answer defendant Griffith's cross claims. Since the court has found that Virginia National Bank waived the venue restriction of § 94, it is unnecessary for the court to consider the effect of defendant Griffith's third party claim on the § 94 provisions.

 Defendant Virginia National Bank also filed a motion for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure asserting that count one of the complaint merely alleges violation of Regulation Z promulgated under the Consumer Credit Protection Act (15 U.S.C. § 1601 *et seq.*) and fails to set forth the nature of such violation. A motion for a more definite statement is ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail, and if requirements of the general rule as to pleadings are satisfied and the opposing party is fairly notified of the nature of the claim, such motion is inappropriate. *U. S. v. Board of Harbor Commissioners*, 73 F.R.D. 460 (D.C.Del. 1977). Here, Virginia National Bank is not calling for more information but clarification of doubtful and ambiguous averments. A motion for a more definite statement is to be granted if a pleading's vagueness prohibits defendant from filing a responsive pleading. *Feldman v. Pioneer Petroleum, Inc.*, 76 F.R.D. 83 (D.C.Okl.1977). Plaintiff need not allege facts to prove that defendant violated Regulation Z, but he is required to give defendant notice of the nature of such violation. Federal Rules of Civil Procedure 8(a)(2). Therefore, Virginia National Bank's motion for a more definite statement is granted. Plaintiff will be granted fifteen days to submit a more definite statement, and defendant will be allowed twenty days to respond to such pleading.

In accordance with the Memorandum Opinion entered this day it is hereby ADJUDGED and ORDERED that defendant Griffith's motion to dismiss count one of plaintiff's complaint is denied, but the court reserves the right to reconsider the motion after the case is fully developed on its merits.

It is further ORDERED that defendant Griffith's motion to strike count two of the complaint for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure is granted. However, plaintiff is granted fifteen days in which to amend his pleading, if possible, to satisfy the requirements of Rule 9(b).

It is further ORDERED that defendant Virginia National Bank's motion for a more definite statement is granted. Accordingly, plaintiff is allowed fifteen days to submit a more definite statement, and defendant is allowed twenty days after the receipt of such pleading to file a response.

It is further ORDERED that defendant Virginia National Bank is allowed twenty (20) days to answer defendant Griffith's cross claim.

It if further ORDERED that defendant Virginia National Bank's motion to dismiss for improper venue is denied. In accordance with 28 U.S.C. § 1292(b), this court is of the opinion that this venue issue involves a controlling question of law as to which there is substantial grounds for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of this litigation. Therefore, this issue is hereby certified for immediate appeal to the United States Court of Appeals for the Fourth Circuit.