**KELLOGG COMPANY, Plaintiff,**

v.

**FIRST NATIONAL BANK OF LOUISVILLE, Defendant.**

No. K 80–430.

United States District Court, W. D. Michigan, S. D.

Feb. 4, 1981.

Furth, Fahrner, Bluemle, Mason & Wong, San Francisco, Cal., Rodney L. Eason, Battle Creek, Mich., for plaintiff.

William M. Newman, Muskegon, Mich., W. Robinson Beard, Louisville, Ky., for defendant.

## OPINION

### Substantive Facts

ENSLEN, District Judge.

Kellogg Company filed a suit in this Court against the First National Bank of Louisville in June of 1980. The Kellogg Company is seeking declaratory relief discharging it from its obligations under a loan guaranty agreement given to First National Bank in 1978. The agreement provides that Kellogg would personally guarantee payment to the Bank of a loan extended to Michigan Properties, a Connecticut limited partnership doing business in Michigan. The Bank's loan to Michigan Properties is secured by a property located in Michigan and Illinois as well as a promissory note executed by Michigan Properties. It is Kellogg's contention, that because Michigan Properties was sold to another corporation without its consent or knowledge, it should be discharged from its obligations under the guaranty agreement.

### Procedural Facts

Soon after the Complaint was filed, the Defendant-Bank asked this Court to grant a Motion to Dismiss. The Motion stated two reasons why the Court should grant a dismissal. First it claimed that the Defendant, as a national banking association, which has been organized pursuant to the terms of the National Bank Act, 12 U.S.C. § 21 et seq; has not been chartered nor established in the State of Michigan; and therefore venue is improper. Second, it argued that the claim for relief does not provide a basis for in personam jurisdiction. Accordingly, it has moved the Court to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(3).

The Plaintiff has responded to these claims by arguing that any change in venue to which the Bank may have been entitled has been waived by its conduct, and that the question raised concerning jurisdiction over the Defendant is without merit, because it has sufficient "contacts" with the State of Michigan. It also argued that if the Court finds that venue is improper, that it should transfer the action, not dismiss it.

A hearing was held on this matter on November 5, 1980. At that time, the parties asked the Court to permit them to submit supplemental materials in support of their respective positions and I agreed. In mid-December, I was once again petitioned by the Plaintiff to permit further discovery as to the venue question. I was persuaded that this was a reasonable request, and extended the discovery deadline until January 6, 1981. The matter is now before me for a ruling.

### Jurisdiction

This Court recognizes that the jurisdictional question has been informally resolved by the parties. The Defendant no longer asserts that this Court is without jurisdiction over its person (See Johnston's deposition). I believe that such a resolution is proper, since my own independent review of the facts lead me to the conclusion, that the Court does have personal jurisdiction over the Defendant. This Court does, indeed, have the authority to hear the action and render a decision on its merits.[1]

Although this Court has such authority, it will not exercise it unless I am convinced that venue properly lies in this district. Determining that a Court has the jurisdictional grant to act tells one nothing about the venue requirements. *Southern Electric Steel Company v. First National Bank*, 515

---

1. This Court not only has jurisdiction over the Defendant, but also jurisdiction over the subject matter. The suit involves citizens of different states and the underlying cause (the payments underlying the agreement indicates that an amount well over $10,000 is in controversy).

F.2d 1216 (CA 5 1975). The standards for venue and jurisdiction are not the same, and each must be satisfied separately before this Court will act upon the merits of the case.

### Venue

The First National Bank of Louisville is a national bank covered by the National Bank Act.[2] According to this Act:

Actions and proceedings against any association under this chapter may be had in any district or territorial court of the United States held within the district in which such association may be established, or in any state, county or municipal court in the county or city in which said association is located having jurisdiction in similar cases. 12 U.S.C. § 94.

■ This provision, 12 U.S.C. § 94 (hereinafter referred to as § 94), has been held, by the Supreme Court, to be mandatory and not permissive. National banks are to be sued in the district in which they are established or in the county where they are located. *National Bank of North America v. Associates of Obstetrics & Female Surgery, Inc.*, 425 U.S. 460, 96 S.Ct. 1632, 48 L.Ed.2d 92 (1976). The former restriction refers to cases pending in federal courts; the latter to those in state courts. *Mercantile National Bank v. Langdeau*, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963); *Radzanower v. Touche Ross & Company*, 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976).

■ To determine where a bank is "established" one is to look to the bank's charter. A bank can only be established in the county designated in its charter. As pointed out by the Defendant, this appears to be the unanimous holding of federal courts which have considered the issue. *Leonardi v. Chase National Bank*, 81 F.2d 19 (CA 2 1936); *Northside Iron & Metal Company v. Dobson & Johnson, Inc.*, 480 F.2d 798 (CA 5 1973); *NYTCO Services, Inc. v. Hurley's Grain Elevator Company*, 422 F.Supp. 114 (W.D.Tenn.1976).

2. All parties agree that the Defendant is a national bank within the meaning of the National Bank Act.

The Supreme Court in *Citizens and Southern National Bank v. Bougas*, 434 U.S. 35, 98 S.Ct. 88, 54 L.Ed.2d 218 (1977) also identified this as the trend followed by most federal courts. The Supreme Court, however, did not voice its approval or disapproval on this subject. Instead, it decided that banks, for *state* venue purposes, were "located", not only to the county specified in the bank's charter, but in any (other) county where the bank has an authorized branch. It declined to make any broad pronouncement as to the question of federal venue, and limited its decision strictly to state venue proceedings.

Courts which have reviewed this issue since *Bougas, supra,* have shown a reluctance in expanding the meaning of "established" to encompass federal judicial districts where an authorized branch bank can be found. Instead, they have treated "established" to mean only the place named in the bank's charter. *Robinette v. Griffin*, 483 F.Supp. 28 (W.D.Va.1977); *Dawson v. First National Bank of Chicago*, 435 F.Supp. 88 (D.C.Ariz.1978).

This controversy has no real impact in this case because it is clear from the affidavits and briefs, that the First National Bank of Louisville is not "established" in the State of Michigan. It's charter does not designate any Michigan county as such, nor does the bank have any authorized branches in the state.

This observation, however, does not resolve this matter. As with most legal principles, there are exceptions to the rule and the venue requirement can be waived.

■ An exception to the general venue provision of § 94 occurs when the action is "local" as opposed to "transitory". It has long been held that if an action is local, then the bank may be sued in a county or city other than where it is located. *Casey v. Adams*, 102 U.S. 66, 26 L.Ed. 52 (1880); *Chateau Lafayette Apartments v. Meadow Brook National Bank*, 416 F.2d 301 (CA 5

1969). Local actions are, of course, suits in rem, and they are prosecuted where the "thing" upon which they are founded is situated. *Casey, supra.*

In the case at hand, it is clear that both the Defendant and the Plaintiff believe that this is a transitory action, and not a local proceeding. The Defendant has given a lengthy explanation of why it is transitory and the Plaintiff has not disagreed. Also, the fact that both parties recognize that the Court must have *personal* jurisdiction to act in this suit clearly establishes that this is an in personam action—not in rem.

■ Beside allowing for the local versus transitory exception, courts have long recognized that the venue provision of § 94 is personal, and it may be waived by the bank. *First National Bank v. Morgan*, 132 U.S. 141, 10 S.Ct. 37, 33 L.Ed. 282 (1889); *Atlantic Quality Construction Corporation v. First Pennsylvania Bank*, 440 F.Supp. 213 (D.C. Puerto Rico 1976); *Stinnett v. Third National Bank*, 443 F.Supp. 1014 (D.C.Minn. 1978). Generally, the bank is considered to have waived the protection of § 94 if it has failed to object to venue in a timely manner, or if its conduct is inconsistent with its assertion that the provision is applicable.

■ A bank's objection to venue has been held *not* to be timely when it appeared and allowed the case to go to trial upon its merits without claiming its venue defense pursuant to § 94. *Morgan, supra.* It has also been found that an objection which was raised only after the bank had answered and participated in discovery was untimely. *First National Bank v. Texas Foundries, Inc.*, 512 S.W.2d 690 (Tex.Civ. App.1974). Clearly, a bank that files a motion challenging venue in lieu of an answer, as was done in this case, has acted in a timely manner. FRCP 12(b), *Leonardi, supra.*

Banks have been found to have waived this venue privilege by their "business activities". It has been one of the Plaintiff's major contentions, throughout this whole controversy, that the Defendant's "course of conduct" in this district has indicated a "voluntary and intentional relinquishment" of its § 94 rights. Needless to say, the Defendant has steadfastly disagreed with such a characterization. I have examined the case law to determine what level of business activity must be present to constitute a waiver of § 94 rights.

One of the leading cases, which was cited by the Plaintiff in its brief is *Robinette, supra.* The *Robinette* court determined that the national bank had waived its venue privilege because the defendant bank operated a branch in the court's district; and this "business activity" was sufficient to indicate a waiver.

Similar results were reached in both *Frankford Supply Company v. Matteo*, 305 F.Supp. 794 (E.D.Pa.1969); and *Allen v. Wachovia Bank & Trust Company*, NA 470 F.Supp. 18 (E.D.N.C.1978). In *Frankford* the court held that the national bank had waived § 94 by finding the following facts decisive: the bank offered a full line of services in the district; its funds could be withdrawn from any office in the district; and the bank activity solicited Philadelphia customers. The court in *Allen* found that the bank had waived its venue privilege by its establishment of numerous branches; extensive commercial advertising; and by its use of the federal court in the past. Also see *Reaves v. Bank of America*, 352 F.Supp. 745 (S.D.Cal.1973) where the venue privilege was found to be waived and, according to the court, the bank could be sued in the district in which the action was brought because it had many branches in the court's district; the bank sued in that district; and all the major transactions including the suit had occurred in that district.

The trend outlined above has not been adopted by many courts. In fact many of the Circuits, which have reviewed this issue, have determined that national banks have not waived the venue defense even though they were "present" in the district. The Ninth Circuit in *Bechtel v. Liberty National Bank*, 534 F.2d 1335 (CA 9 1976) held that a national bank which was established in New

Mexico and had acquired ownership in a large Arizona farm had not waived its venue privilege. In *Northside Iron and Metal Company v. Dobson and Johnson, Inc.*, 480 F.2d 798 (CA 5 1973) the Court decided that a bank which was established in Tennessee, but had financed a government warehouse in Georgia, did not impliedly waive the bank's venue defense. Also the Third Circuit in *Helco, Inc. v. First National City Bank*, 470 F.2d 883 (CA 3 1972), determined that even though a national bank of New York had established five branches in the Virgin Islands; and had entered into a contract with Plaintiff Helco to build a house in the Virgin Islands; these actions did not constitute a waiver. Also see *Atlantic Quality Construction Corporation v. First Pennsylvania Bank, N.A.*, 440 F.Supp. 213 (DC PR 1976); *Staley v. Homeland, Inc.*, 368 F.Supp. 1344 (ED NC 1974).

■ I believe that regardless of what trend I decide to follow, the result would be the same. The Defendant Bank does not have the requisite level of business activity or involvement which is tantamount to a waiver of the venue privilege under § 94. The discovery in this action reveals that the Defendant has no branch offices in the State of Michigan. It does not employ any employees in this district, nor does it have a business or telephone listing here. It has no agents, and no officers within this district (See affidavit of Clyde H. Foshee). Although the Defendant does have customers in this district; and it does conduct some commercial lending and leasing activity, which may appear significant at first blush, such activity constitutes only one-half of one percent of its total national business (See deposition of Mr. Johnston and Defendant's brief). Furthermore, the Defendant has not asked courts in this district to adjudicate it legal rights concerning the subject matter of this lawsuit. Because the Defendant has such limited involvement with this district, in my opinion, the Defendant Bank did not waive its venue privilege under § 94.

Due to the fact that Defendant Bank is not established in this district and the ac-

tion clearly falls within the strictures of § 94, I conclude that this district is not the proper forum for this lawsuit.

### Change of Venue

Since this Court has opined that the venue is improper, it is faced with two choices: I may dismiss the action or transfer it to a forum deemed proper. The Plaintiff has asked this Court to transfer the case. It is within the power of this Court to transfer the case pursuant to 28 U.S.C. § 1406(a):

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

■ According to case law it is not mandatory to have jurisdiction over the person of the Defendant in order to transfer the action. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 8 L.Ed.2d 39, 82 S.Ct. 913 (1962). However, a court must have subject matter jurisdiction. Since both have been established in this case, I may transfer the action (See section on Jurisdiction and Footnote 1).

The majority of courts which have found venue improper have concluded that it is in the interest of justice to transfer to the proper forum, rather than to dismiss the action. The reasons most often cited by courts for doing this include: defendant has misled the plaintiff; the statute of limitations has run; or simply because the interest of justice would be served by a transfer. *Dayton Casting Company v. Full Mold Process, Inc.*, 404 F.Supp. 670 (D.C.Ohio 1975); *DeLa Fuete v. I.C.C.*, 451 F.Supp. 867 (Ill.1978). Of course some courts refuse to transfer indicating that the plaintiff has not shown "good cause" or "injustice". *Lowery v. Estelle*, 533 F.2d 265 (CA 5 1976).

■ I believe that this case should be transferred rather than dismissed. The Plaintiff has not filed the action in this district as a form of harassment. It is clear, from the arguments presented, that the action was brought in good faith, and that Plaintiff felt that venue would be

proper in this district. Furthermore, since the Plaintiff is seeking declaratory relief, this Court wants to ensure an expedient hearing on the merits. This can best be accomplished by transferring the case, rather than dismissing it. Hopefully, this action will prevent any more needless delay and expense for the parties involved.

Therefore, because this Court has found that venue is not proper in the Western District of Michigan, it orders that this cause of action be transferred to the Western District of Kentucky, where the Defendant is "established". The Motion to Dismiss is denied because of the Court's transfer of the cause of action.